FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

MAR 1 6 2026

GARY P. SERDAR
CLERK OF COURT
BY _____
DEPUTY CLERK

Jack Ferm
929 W. Sunset Blvd, # 21-205
St. George Utah, 84770
(435) 674-9222
jackferm@yahoo.com
Plaintiff: Pro Se

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

## AT ST. GEORGE

| | |
|---|---|
| JACK FERM<br><br>*Plaintiff,*<br>VS.<br><br>AGRITECH PROPERTIES.<br>DON GORDON,<br>DR. MICHAEL ORGAN,<br>ANDY JAGPAL<br>RICHARD CINDRIC,<br>GLOBAL OIL AND GAS<br>RECOVERY CORP<br><br>JOHN AND JANE DOES I-X<br><br>*Defendants.* | **COMPLAINT**<br><br>Civil N<br><br>Case: 4:26-cv-00029<br>Assigned To : Allen, Ann Marie McIff<br>Assign. Date : 3/17/2026<br>Description: Ferm v. Agritech<br>Properties et al<br><br>Judge:<br><br>~~JURY DEMAND~~ |

Plaintiff, Jack Ferm, hereby complains and alleges against Defendants

AGRITECH PROPERTIES, Don Gordon, Dr. Michael Organ, Andy Jagpal,

Richard Cindrick, and Global Oil and Gas Recovery Corp, as follows:

## NATURE OF THE CASE

1. This action arises from the Defendants' intentional scheme to avoid paying a written Finder's Fee Agreement after agreeing to the terms, accepting the benefit of Plaintiff's introduction in connection with a $75 million reverse-merger funding transaction.

   Defendants Gordon and Organ represented that Agritech Properties possessed a valid $75 million funding letter and sought a qualified company to reverse merge into their Canadian public shell.

   Defendants Jagpal is a direct in Defendant Richard Cindric's company Global Oil, and knew Cindric had signed a fee agreement in order to meet the owners and operators of Agritech

   Defendant Jagpal, is also a director of Global, he devised a "legal Theory" that by taking Richard Cendric into the public company shell and not Global there was no existing agreement and they could avoid paying Plaintiff his earned fees.

   After Plaintiff performed and negotiations advanced, Defendants coordinated efforts to eliminate or drastically reduce Plaintiff's earned compensation.

   Defendants' conduct constitutes, among others, anticipatory breach of contract, tortious interference with contract, fraud pled with particularity, unjust enrichment, quantum meruit, civil conspiracy, and alter ego liability.

## II. PARTIES

2. Plaintiff Jack Ferm, is a citizen of the US and a resident of St. George, Utah. He acts solely as a finder and does not negotiate financing terms.

3. Defendant Agritech Properties is a Canadian public shell corporation. Whose address, based on an extensive search, is Suite 302 - 370 Esplanade East, North Vancouver, British Columbia, V7L 1A4, Canada. The company is Managed controlled and operated by Defendants Don Gordon and Dr. Michael Organ

4. Defendant Don Gordon is Canadian Citizen he is a director and controlling officer of Agritech. His physical address also based on an extensive search, is also Suite 302 - 370 Esplanade East, North Vancouver, British Columbia, V7L 1A4, Canada

5. Defendant Dr. Michael Organ is also a Canadian citizen and another director and controlling officer of Agritech. His physical work address is Michael Organ, Department of Chemistry and Biomolecular Sciences, University of Ottawa, 75 Laurier Ave E, Ottawa, ON K1N 6N5, Room BSC 512B

6. Defendant Andy Jagpal is a Canadian Citizen Domiciled in Vancouver BC, his physical address also based on an extensive search, is Suite 250 - 750 West Pender St. Vancouver, British Columbia V6C 2T7; He is a Director of Defendant Global Oil and Gas Recovery Corp.

7. Defendant Richard Cindric is President and CEO of Global Oil & Gas Recovery Corp. his physical address based on an extensive search, is Suite 250 - 750 West Pender St. Vancouver, British Columbia V6C 2T7; He also resides in Vancouver BC Canada but has offices in Portland, OR., and Wichita, KS.

No defendant resides in Utah.

8. Defendant Global oil and gas recovery corp. is a private Delaware corporation operating in the States of Kansas and Texas. Their physical

COMPLAINT
3 of 24

address is Suite 250 - 750 West Pender St. Vancouver, British Columbia V6C 2T7

## III. JURISDICTION AND VENUE

9. This Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff is the only Utah Resident while defendants are all residents of Canada

10. The amount in controversy exceeds $75,000.

11. Venue is proper pursuant to 28 U.S.C. § 1391 and the contractual Utah venue provision.

## IV. FACTUAL ALLEGATIONS

12. On December 8, 2025, Plaintiff and Defendant Cindric executed a written Finder's Fee Agreement providing 3% cash and 3% equity on $75 million in funding (approximately $1,500,000 total for each of the three associates). A True and correct copy of the agreement is attached hereto and incorporated as **EXHIBIT A**

13. The Agreement expressly limited Plaintiff's role to an introduction only and designated Utah governing law and venue.

14. On December 12, 2025, Plaintiff introduced Cindric to Gordon and Organ. The controlling directors and officers of Agritech.

15. Gordon and Organ had informed Plaintiff and his associates in or around October of 2025 that they were seeking a company for their public Company to conduct a reverse merger.

16. GORDON and ORGAN represented to plaintiff and others that Agritech possessed a $75 million funding letter and required a company capable of passing institutional due diligence.

17. Plaintiff relied on these representations in making the introduction.

18.    Between December 2025 and February 2026, Defendants Gordon and Organ negotiated directly with Cindric.

19.    Defendants even included Plaintiff in at least one Zoom call showing their intent to move forward with Defendant Richard Cindric.

20.    Defendants subsequently offered plaintiff $180,000 per associate—approximately 10% of the contracted amount.

21.    Defendants retained the benefit of Plaintiff's introduction while repudiating their compensation obligations.

22.    Industry standards in Canadian RTO and oil & gas capital markets commonly provide 2–5% cash and 2-5% equity compensation, making Plaintiff's 3% + 3% structure commercially reasonable.


## V. SALIENT CLAIMS

### FRAUD – RULE 9(b) PARTICULARITY

23.    In December 2025, Gordon and Organ represented to Plaintiff that Agritech possessed a valid $75 million funding letter and intended to complete a reverse merger consistent with that structure.

24.    These representations were made directly in transaction communications to induce Plaintiff to provide a qualified candidate.

25.    The statements were material because they defined the structure triggering Plaintiff's compensation.

26.    Upon information and belief, at the time these statements were made, Defendants either did not intend to complete the transaction as represented or intended to restructure it to avoid finder compensation.

27.    Defendant Cindric offered Plaintiff and each of his associates, the sum of $180,000, that offer revealed - they, the group, were making the offer.  In

addition, and as further support that this money would come from the group, plaintiff has known Cindric for a number of years and knew Cindric did not have money to make such an offer from his personal or business activities. In fact, one of the reasons Ferm introduced Cindric to GARDON and ORGAN, plaintiff had wanted to raise money for Cindric through an investment bank, but they charge $35,000 in front for Due Diligence and building the offering. Thus, this offer from defendants is evidence of scienter.

28.     Plaintiff reasonably relied on Defendants' representations and would not have introduced Cindric absent those statements.

29.     As a direct and proximate result, Plaintiff suffered damages of approximately $1,500,000 for each associate plus consequential losses.

## TORTIOUS INTERFERENCE WITH CONTRACT

30.     A valid contract existed between Plaintiff and Cindric.

31.     Defendants had actual knowledge of the contract.

32.     Defendants intentionally interfered by advising repudiation and proposing structural avoidance.

33.     Defendants' actions were not justified and were motivated by economic self-interest.

34.     Defendants' interference was a substantial factor causing breach.

35.     Plaintiff suffered damages as a direct result.

## ALTER EGO / VEIL PIERCING

36.     Agritech was dominated and controlled by Gordon and Organ regarding this transaction.

37.     Global Oil and Gas was dominated by Cindric and Jagpal regarding this transaction.

38.     Compensation decisions were made personally by Gordon, Organ, regarding Agritech, and Cindric and Jagpal regarding Global.

39.     The corporate entity was used to shield individuals from liability.

40.     Injustice would result if the corporate form is respected.

## UNJUST ENRICHMENT AND QUANTUM MERUIT

41.     Plaintiff conferred a valuable benefit by introducing Cindric.

42.     Defendants knowingly accepted and retained that benefit.

43.     Retention without payment would unjustly enrich Defendants.

44.     In the alternative, Plaintiff seeks the reasonable market value of services rendered.

## CIVIL CONSPIRACY

45.     Defendants agreed among themselves to avoid or reduce Plaintiff's compensation.

46.     Overt acts were taken in furtherance of that agreement.

47.     Plaintiff suffered damages as a result.

## DAMAGES

48.     Compensatory damages of approximately $4,500,000.

49.     Consequential damages to be proven at trial.

50.     Punitive damages for intentional fraud and interference.

51.     Attorney's fees pursuant to contract and law.

COMPLAINT

52.     Pre- and post-judgment interest.

## RELIEF REQUESTED

53.     Judgment jointly and severally against Defendants.

54.     Compensatory and punitive damages.

55.     Costs, fees, and interest.

56.     Such other relief as the Court deems just and proper.

## V. PLAINTIFF'S ATTEMPT TO MITIGATE

57.     Plaintiff has taken steps to exhaust any administrative and other remedies before filing this suit. Specifically, Plaintiffs sought to mitigate the damages by communication directly with defendants to show their position was invalid and to resolve the issues prior to filing this complaint. Stephan Jedynak Esquire, one of Plaintiff's associates, on Plaintiff's behalf, provided a Memorandum to Dr. Michael Organ and Don Gordon entitled *Finder Structure – Compliance, Finance & Governance Risk:* Date: 27 March 26, This Memorandum is Attached hereto and incorporated hereat as (EXHIBIT B) Every attempt to mitigate defendants wrongful conduct failed. Global without Cindric had no value to mitigate damages.

### FIRST CAUSE OF ACTION
Anticipatory breach of Contract
Richard Cindric

58.     Plaintiff adopts and fully incorporates the allegations of the preceding paragraphs as if they were set forth herein

59.     Plaintiff and defendant Richard Cindric entered into a written finder's fee agreement, dated December 8, 2025 (the "Effective Date") The terms of the agreement were set forth therein and were:

a.  The term client refers to. Richard Cindric, President & CEO Global Oil & Gas Recovery Corp or such other name the client may choose to operate under *severely and jointly* with its principles.  This agreement is in consideration for the reverse Merger with A Canadian Public Company with a funding agreement for $75M USD

b.  Finder will introduce the Client to Public Company that is interested in the Merger and is capable of funding their project

c.  This Agreement sets forth the terms and conditions by which the Finder may be compensated in the event that the Merger is consummated; and, without negotiating any terms for the relationship between the parties the finder and the Client agree that the sum of 3 percent (3%) of the money provided is an appropriate compensation and consideration for the finder to receive and said sum shall be paid from the proceeds of the capital raise. To Wit:

d.  The fee to the Finder shall be paid on all money received by or through the funding and only upon the successful close of the funding(s), including future funding rounds.

e.  Plus 50% of the 100,000,000 shares of the company stock they shall receive to Jack Ferm, Joe Novak and Stephan Jednak.as stated above

f.  Note Jack Ferm, Joe Novak and Stephan Jednak. Also agree to sell their 50% of the shares back to Richard Cindric for an additional three percent and a lessor number of shares in the company as determined by mutual agreement

g. Finder will not charge any up-front fee for this assistance but will be compensated (for this assistance) as provided by this agreement.

h. Duties. The Finder and the Client hereby agree that the Finder's duties and responsibilities under this Agreement are expressly limited to exclude any activity or function that is traditionally performed by a "broker."

i. Finder's Fee. The Client shall pay to the Finders the fee agreed upon from the first money raised.

j. GOVERNING LAW; VENUE. THIS AGREEMENT HAS BEEN EXECUTED IN AND SHALL BE GOVERNED EXCLUSIVELY BY THE LAWS OF THE STATE OF UTAH, U.S.A. WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS RULES THEREOF OR OF ANY STATE. VENUE FOR ANY ACTION BROUGHT HEREUNDER OR PURSUANT TO THIS AGREEMENT SHALL BE PROPER ONLY IN A FEDERAL OR STATE COURT IN WASHINGTON COUNTY, UTAH, USA.

k. Court Costs and Attorneys' Fees. If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover costs of court and reasonable attorneys' fees from the other party or parties to such action, which fees may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose, and which fees shall be in addition to any other relief that may be awarded.

l. Severability. In the event that any of the provisions, or portions of this Agreement are held to be illegal, unenforceable, or invalid by any court

of competent jurisdiction, the legality, enforceability, and validity of the remaining provisions, or portions thereof shall not be affected thereby, and, in lieu of the illegal, unenforceable, or invalid provision, or portion thereof there shall be added a new legal, enforceable, and valid provision as similar in scope and effect as is necessary to effectuate the results intended by the deleted provision or portion.

60.    Plaintiff performed each and every covenant and condition on his part he was required to perform, except as to any covenant or condition, he was prevented from performance by defendants conduct.

61.    The part These defendants were concerned about in the fee agreement was waived by Stephan Jedynak Esquire in his memorandum dated 27 March 26 and addended hereto as **EXHIBIT B** it is also severable under the terms of the fee agreement

62.    Defendants GORDON, ORGAN, and JAGPAL took the position that they had no agreement with Plaintiff and could take Cindric with his knowledge and experience into the company and pay Plaintiff nothing or minimally, pennies for the introduction while obtaining the $75M in funding for them to build the company with Cindric including producing wells.

63.    First there was a legally enforceable contract, Second Plaintiff performed as agreed, Third Defendants failed to honor the contract, Plaintiff has been harmed by their failure. Defendants have been unjustly enriched by Plaintiffs introduction and their refusal to pay plaintiff what he bargained for.

## SECOND CLAIM FOR RELIEF
Quantum Meruit
Richard Cindric

64.    Plaintiff repeats and realleges all prior paragraphs as though the same are set forth hereat in full.

65.    Plaintiff Second claim against defendants is offered if the court finds there is some legal problem with his fee agreement that would invalidate it. In such case he seeks recover under Quantum Meruit. Quantum meruit depicts the amount of burden on a contract or agreement inferred by law. It's an impartial doctrine, supported by the theory that no party who profits from the labor and goods of the other party should be unjustly enriched. The law dictates that a promise to compensate a fair sum for the labor and the goods provided exists even in the absence of a particular contract.

66.    Quantum meruit has four elements: (1) the provision of valuable services or materials; Plaintiff provided a valuable service to Cindric, Plaintiff introduced Cindric to GORDON, ORGAN, and AGRITECH, they offered him a position and stock in their Public Company, he has accepted that position

(2) the services or materials were provided to the defendant;

(3) the defendant accepted the goods or services; and

(4) the defendant had reasonable notice that the plaintiff would perform the services or furnish the materials and would expect compensation from the defendant. The parties contracted for a specific compensation. i.e. the Fee Agreement

67.    Quantum meruit claims typically arise when a contract is missing, unenforceable, or incomplete. Courts may allow recovery under this doctrine when:

1. A contract existed but was terminated or breached before full performance.

2. Services were rendered without a formal agreement but with the expectation of payment.

3. A written contract was unenforceable due to legal technicalities (e.g., lack of a required license).

4. One party benefitted from the other's work or services but refuses to pay

68.     Plaintiff performed a valuable service for ALL of the defendants, as agreed, he introduced Richard Cindric to AGRITECH and its principals Gordon, and ORGAN, however the participation and actual relationship of JAGPAL is concerning, as an Director of Global, Richard Cindric's company, from reading Exhibit A Jagpal appears to have devised the "theory" that by taking Cindric into Agritech and Not Global Plaintiff would not be entitled to any compensation. Defendants accepted Cindric, his back ground experience and knowledge and believe he can build a productive oil company for them. They have offered Cindric a position in their company AGRITECH Properties plus stock. But all of the defendants refuse to pay Plaintiff his agreed fees. Thus, Defendants and all of them have been unjustly enriched at Plaintiffs expense

69.     Calculating Compensation Under Quantum Meruit

Courts consider several factors when calculating fair compensation under a quantum meruit claim:

1. Market value of the services rendered.

2. Time and effort involved.

3. Industry standards and customary rates.

4. Quality and extent of the work completed.

5. Bona fide expectations of both parties at the time of service.

This calculation aims to avoid unjust enrichment and restore balance without punishing either party. The goal is not to award a profit but to reimburse the reasonable value of services or goods provided.

70.        Industry Standards: Commercial Norm Analysis

In Canadian small-cap RTO and capital markets transactions:

Finder fees of 2–5% on capital raised are standard.

Equity compensation of 2–5% of an RTO transaction value is within market norms.

Specifically, combined structures (cash + equity) are common in oil & gas and CPC/RTO transactions.

A capped 3% + 3% structure falls well within industry tolerance bands and does not constitute an abnormal burden if clearly finite.

Thus, the fee structure of plaintiff's fee agreement was fair, equitable and acceptable. Plaintiff request this same fee to be ordered and judgment rendered for him in the same amount.

THIRD CLAIM FOR RELIEF

QUANTUM MERIUT

Against Defendants GORDON, ORGAN JAGPAL and AGRITECH

71.        Plaintiff repeats and realleges all prior paragraphs as though the same are set forth hereat in full.

72.        Plaintiff Third claim against the foregoing defendants is offered due to defendants' position that there is no fee agreement between them and Plaintiff, so they owe Plaintiff no commission or fees. In such case Plaintiff seeks to recover under Quantum Meruit. Quantum meruit depicts the amount of burden on a contract or agreement inferred by law. It's an impartial

doctrine, supported by the theory that no party who profits from the labor and goods of the other party should be unjustly enriched. The law dictates that a promise to compensate a fair sum for the labor and the goods provided exists even in the absence of a particular contract.

73.    Quantum meruit has four elements:

(1) the provision of valuable services or materials; Plaintiff provided a valuable service to these three defendants, Plaintiff introduced Cindric to GORDON, ORGAN, and AGRITECH, they offered him a position and stock in their Public Company, he has accepted that position

(2) the services or materials were provided to the defendants;

(3) the defendant accepted the goods or services; and

(4) the defendant had reasonable notice that the plaintiff would perform the services or furnish the materials and would expect compensation from the defendant. The parties contracted for a specific compensation. i.e. the Fee Agreement, Plaintiff made the introduction with the expectation of being compensated from the Company Funding agreement

74.    Quantum meruit claims typically arise when a contract is missing, unenforceable, or incomplete. Courts may allow recovery under this doctrine when:

1. A contract existed but was terminated or breached before full performance.

2. Services were rendered without a formal agreement but with the expectation of payment.

3. A written contract was unenforceable due to legal technicalities (e.g., lack of a required license).

4. One party benefitted from the other's work or services but refuses to pay

75.     Plaintiff performed a valuable service for ALL of the defendants, as agreed, he introduced Richard Cindric to AGRITECH and its principals Gordon, and ORGAN, and especially for JAGPAL who benefits as a director of Global. Defendants have accepted Cindric, his back ground experience and knowledge and believe he can build a productive oil company for them. They have offered Cindric a position in their company AGRITECH Properties plus stock. But refuse to pay Plaintiff his agreed fees. Thus, Defendants have been unjustly enriched at Plaintiffs expense

76.     Calculating Compensation Under Quantum Meruit

Courts consider several factors when calculating fair compensation under a quantum meruit claim:

1. Market value of the services rendered.

2. Time and effort involved.

3. Industry standards and customary rates.

4. Quality and extent of the work completed.

5. Bona fide expectations of both parties at the time of service.

This calculation aims to avoid unjust enrichment and restore balance without punishing either party. The goal is not to award a profit but to reimburse the reasonable value of services or goods provided.

3. Industry Standards: Commercial Norm Analysis

In Canadian small-cap RTO and capital markets transactions:

Finder fees of 2–5% on capital raised are standard.

Equity compensation of 2–5% of an RTO transaction value is within market norms.

Specifically, combined structures (cash + equity) are common in oil & gas and CPC/RTO transactions.

A capped 3% + 3% structure falls well within industry tolerance bands and does not constitute an abnormal burden if clearly finite.

Thus, the fee structure of plaintiff's fee agreement was fair, equitable and acceptable. Plaintiff request this same fee to be ordered and judgment rendered for him in the same amount.

## FOURTH CLAIM FOR RELIEF

### Inducing breach of contract

### Against Defendants, AGRITECH PROPERTIES, DON GORDON, DR. MICHAEL ORGAN, and ANDY JAGPAL

77.     Plaintiff repeats and realleges all prior paragraphs as though the same are set forth hereat in full

78.     There was in existence between Plaintiff and Defendant Richard Cindric a Valid and Enforceable Contract

79.     Each of the defendants had knowledge of the contract

80.     The inducement was intentional to reduce the compensation Plaintiff contracted to receive.

81.     There was an Actual Breach of the Contract which occurred on or about February 26, 2026

82.     The breach caused actual damages to Plaintiff in the amount of $4.500,000.00 dollars

83.     Plaintiff is entitled to Compensatory Damages of $4.5 Million

84.     The conduct of these defendants was malicious wanton and intended to cause Plaintiff financial loss. Plaintiff is entitled to Punitive Damages of

three times his actual loss. Or $4,500,000.00 for a total judgement of $6,000,000.00 times the three points or a total judgment of $18,000,000

## FIFTH CLAIM FOR RELIEF

## FRAUD

AGAINST Defendants, DON GORDON, DR. MICHAEL ORGAN AGRITECH PROPERTIES, and ANDY JAGPAL

85.   Plaintiff realleges and repeats each and every preceding paragraph as though set forth in full hereat.

86.   Defendants represented to Plaintiff and others that they were looking for a candidate to reverse merge into their Canada Public Shell AGRITECH, that they had a funding letter for $75M that they required a company with a clean background that could pass SEC required Due diligence

87.   Plaintiff introduced these defendants to Richard Cindric and his company Global.

88.   After approximately two months, defendants decided Cindric was the appropriate candidate and offered him, but not his company a role in AFRITECH.

89.   Defendants thereafter decided that there was no fee agreement between Plaintiff and Cindric, but there was an agreement with Global which company they were excluding.

90.   Defendants also determined there was no agreement with them for compensation therefore they owed Plaintiff nothing even as they had requested from Plaintiff a company that could pass an SEC FINRA related background check.

91.   Fraud is an intentional act of deceit designed to reward the perpetrator or to deny the rights of a victim. Here Defendants came up with a scheme by

deception to deny plaintiff his rightfully earned fees and right to earned compensation

92.     They offered Cindric stock and a position in the company rather than to reverse merge his company, EXHIBIT A, is evidence the reason was their erroneous belief they could avoid paying Plaintiff his earned fees. To further demonstrate their intent, they openly state there is no agreement between Plaintiff and them so they owe plaintiff nothing.

93.     The Following Elements are required to establish Fraud.  (1) that the defendant made a representation, they made a series of representation including they wanted to find a candidate for a reverse merger, and many of the claims they made were so baseless, primarily that since there was no fee agreement they owed us nothing

94.     (2) as to a material fact, their representation are all material facts, including their requirement of a company for their reverse merger

(3) which was false, they were shown to be false by their conduct nothing they represented came to fruition, including the reverse merger.

(4) and known to be false by the defendant, their knowledge of their falsity is shown by their offer to Cindric but excluding compensation to Ferm

(5) that the representation was made for the purpose of inducing the Ferm to rely upon it, and (6) that the other party Ferm rightfully did so rely, Plaintiff Ferm reasonably relied on Defendants Representations

(7) in ignorance of its falsity, Plaintiff was ignorant of the deception until all came out in and around February 26, 2026.  And (8) to his injury. Plaintiff has been financially injured and harmed by defendants' deception.

98. Logically and realistically officials looking to do a reverse merger, have no interest in remaining in control of the company. They are looking for someone else to build the company while their stock holdings and stock value grows. They are looking for the easy money.

## SIXTH CLAIM FOR RELIEF

### interference with economic relations

### Against Defendants, AGRITECH PROPERTIES, DON GORDON, DR. MICHAEL ORGAN, and ANDY JAGPAL

99. Plaintiff Repeats and realleges each and every paragraph set forth below as if fully set forth hereat.

100.    interference with economic relations can be established by showing, inter alia, an interference with an existing contract or a contract which is certain to be consummated

1. Interference with economic relations involves actions that disrupt or harm business relationships and transactions. In this case there was an existing written contract between Plaintiff and Richard Cindric and his company Global, Defendants posit, although erroneously that the contract was not with Richard Cindric but with Global his company. See the fee agreement, EXHIBIT A, Richard and Global are clients severally and jointly

2. Defendants also posit that there was no agreement with them for compensation, even as they accepted the benefit knowing there was an expectation of compensation, because they knew Stephan Jedynak personally and they knew he and Us expected compensation for the introduction according to the fee agreement which they had access to and admitted.

3. where one party unlawfully interferes with another's contractual or business relationships. Defendants interfered with the relationship Plaintiff had with Cindric, a written agreement

   Types of Interference: Can include e.g. inducing breach of contract, misrepresentation, or using unlawful means to harm a competitor. Defendants used actional means to induce Cindric to breach the agreement and both the letter and spirit of the agreement

4. Intent Requirement: Typically requires proof of intent to interfere or knowledge that interference would occur. Each defendant knew of the contract relationship with Cindric and Global. Defendants' intent and knowledge is thus established by Exhibit A and their interference

5. Damages: Plaintiffs' seeks compensation for lost profits, business opportunities, Exemplary damages and reputational harm.

101.    Plaintiff and Richard Cindric had an ongoing business relationship; in this case they even had a contract defining their relationship and the terms of compensation Plaintiff's fee agreement EXHIBIT A and other exhibits to be entered, from which the court will find evidence of the calculated arguments contrived to avoid payment to Plaintiff

102.    Defendants Gordon, Organ, AGRETECH and JAGPAL knew of this relationship and the existence of the fee agreement, EXHIBITS A was provided to them.

103.    Defendants intentionally schemed to interfere with the economic and or contractual benefit, again EXHIBIT A

104.    The actual relationship was disrupted EXHIBIT A

105.    Plaintiff's damages were the proximate cause of the interference

## SEVENTH CAUSE FOR RELIEF

### Civil Conspiracy
### Against Defendants: Gordon, Organ, Agritech, Cindric, Global and JAGPAL

106.    Business litigation often involves the use of conspiracy lawsuits against two or more corporations. Often joined in the lawsuit as defendants are the officers of the companies and outside accountants, attorneys, and similar fiduciaries. In many states, officers and directors of a corporation cannot engage in a conspiracy with the corporation unless acting for their private benefit independent of any benefit to the corporation.

107.    In this case the officers and directors were acting for their own benefit, by depriving plaintiff the benefit of his agreement then offering him a far lesser sum to go away.

108.    The elements are; 1. A conspiracy is an agreement between two or more persons to commit a wrongful act. 2. Such an agreement may be made orally or in writing or implied by the conduct of the parties.

109.    Here the defendants agreed between themselves to find a way to circumvent Plaintiff's fee agreement and thereby reduce substantially his earned fee. Rather that the $1.5M to be paid to each of the three associates they offered only $180,000 to each of the associates.

110.    However, they accepted the benefit Plaintiff brought to the table knowing he expected proper compensation as evidenced by the fee agreement.

111.    The tort of conspiracy requires there to be knowledge of the relevant circumstances and of the agreement made. Thus, as a precondition to corporate liability, it must be possible to attribute the relevant employee's or

COMPLAINT
22 of 24

agent's knowledge to the corporation. There are two possible legal approaches: as a matter of agency law, the acts and omissions constituting the alleged conspiracy must have been carried out within the actual or ostensible authority of the agent; both Gordon and Organ were officers and directors of Agritech they were negotiating on behalf of Agritech but their actual concern and interest was their self-interest. They were acting in their official capacity. Additionally, a matter of vicarious liability the acts and omissions must have been carried out in and during the course of the employment. They were: See EXHIBITS A and B and additional exhibits to be introduced in due course, which establishes Scienter.

112.     There is little difficulty when the claim is that the company either conspired with a second company or with at least two natural persons. The requisite knowledge can be attributed under either head as appropriate.

113.     To succeed in a civil conspiracy lawsuit, a plaintiff must prove several elements. First, there must be an agreement between two or more persons. This agreement does not need to be a formal contract; a tacit understanding can be sufficient. Second, the parties to the agreement must have an intent to accomplish either an unlawful purpose or a lawful purpose through unlawful means.

114.     The third element is the commission of an overt, unlawful act by at least one of the conspirators in furtherance of the agreement. Finally, the plaintiff must have suffered actual damage as a direct result of that unlawful act. In most jurisdictions, civil conspiracy is not a standalone claim; it must be attached to an underlying tort, such as fraud or interference with a business contract. Her we have both Fraud and inducement

115. The defendants' conduct was intentional and calculated. The decision to award these damages rests with the jury, which must find that the defendant's conduct was so reckless or indifferent to the rights of others that it warrants this additional penalty.is entitled to Compensatory and punitive damages

116. This cause of action is supported by Defendants Induce to breach Plaintiff's Contract with Richard Cindric and by their Intentional interference with the financial relationship between Plaintiff and Cindric.

Wherefore plaintiff seeks damages as follows:

1. For judgment against defendants and each of them Jointly and Severely.

2. For exemplary damages of three times the actual damages

3. That the judgement be reduced to all cash, plaintiffs no longer wish to be tied to this company or the individuals

4. For all costs of suit and attorney's fees as may become appropriate

5. For such other and further relief as the court may deem just and proper


Dated)March   / 3.26

By. Jack Ferm, Plaintiff Pro Se.