FILED
2026 JUN 14 AM 10:43
CLERK
U.S. DISTRICT COURT

Jack Ferm
929 W. Sunset Blvd, # 21-205
St. George Utah, 84770
(435) 674-9222
jackferm@yahoo.com
Plaintiff: Pro Se

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| JACK FERM<br><br>*Plaintiff,*<br>VS.<br><br>AGRITECH PROPERTIES.<br>DON GORDON,<br>DR. MICHAEL ORGAN,<br>ANDYJAGPAL<br>RICHARD CINDRIC,<br>GLOBAL OIL AND GAS RECOVERY CORP<br>JOHN AND JANE DOES 1-X<br><br>*Defendants.* | **PLAINTIFF'S OBJECTION TO THE MAGISTRATES REPORT AND RECOMMENDATION**<br><br>Civil No. 4:26-cv-00029-DN-PK<br><br>Judge: David Nuffer<br><br>Magistrate Judge Paul Kohler |

# PLAINTIFF'S OBJECTION TO THE MAGISTRATES REPORT AND RECOMMENDATION

## TABLE 1 — CASES & AUTHORITIES (Alphabetical Order)

| Case | Pages |
|---|---|
| **Alexander v. Oklahoma, 382 F.3d 1206 (10th Cir. 2004)** | 68 |
| **Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009)** | 15, 16, 58 |
| **Ashcroft v. Iqbal, 556 U.S. 662 (2009)** | 27, 45, 46 |
| **Atlantic Marine Constr. Co. v. U.S. Dist. Court, 571 U.S. 49 (2013)** | 29 |
| | 15, 58 |

| Case | Pages |
|---|---|
| **Belnap v. Iasis Healthcare, 844 F.3d 1272 (10th Cir. 2017)** | |
| **Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)** | 27, 45, 46 |
| **Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347 (5th Cir. 2003)** | 15, 58 |
| **Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)** | 14, 18, 29, 53 |
| **Burnham v. Humphrey Hospitality, 403 F.3d 709 (10th Cir. 2005)** | 68 |
| **Calder v. Jones, 465 U.S. 783 (1984)** | 9, 14, 28, 29, 53 |
| **Cannon v. Stevens School of Business, 560 P.2d 1386 (Utah 1977)** | 19, 40 |
| **Chambers v. NASCO, Inc., 501 U.S. 32 (1991)** | 6, 23 |
| **Curley v. Perry, 246 F.3d 1278 (10th Cir. 2001)** | 27 |
| **Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008)** | 12, 14, 28, 48 |
| **Ellsworth v. American Arbitration Ass'n, 148 P.3d 983 (Utah 2006)** | 15, 58 |
| **Erickson v. Pardus, 551 U.S. 89 (2007)** | 27, 45 |
| **Far West Capital v. Towne, 46 F.3d 1071 (10th Cir. 1995)** | 23, 27, 48 |
| **GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381 (10th Cir. 1997)** | 12, 45, 68 |
| **Goff v. Hackett Stone Co., 185 F.3d 874 (10th Cir. 1999)** | 6, 11, 68 |
| **Guard-Life Corp. v. Parker Hardware Mfg. Corp., 406 N.E.2d 445 (N.Y. 1980)** | 36 |
| **Hurwitz v. Richards, 436 P.2d 794 (Utah 1968)** | 26, 39 |
| **Israel Pagan Estate v. Cannon, 746 P.2d 785 (Utah Ct. App. 1987)** | 20, 36 |
| **Kasco Servs. Corp. v. Benson, 831 P.2d 86 (Utah 1992)** | 26, 39 |
| **Miller v. Glanz, 948 F.2d 1562 (10th Cir. 1991)** | 23, 27 |
| **M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)** | 29 |
| **OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086 (10th Cir. 1998)** | 12, 14, 28 |
| **Pohl, Inc. v. Webelhuth, 2008 UT 89** | 9, 14, 20, 29, 36, 76 |
| **United States v. Peck, 102 U.S. 64 (1880)** | 26, 40 |

| Case | Pages |
|---|---|
| **Restatement (Second) of Contracts § 245** | 40 |
| **Restatement (Second) of Torts § 766** | 36 |
| **Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953 (10th Cir. 1992)** | 15 |
| **Roehm v. Horst, 178 U.S. 1 (1900)** | 19 |
| **Speakers of Sport, Inc. v. ProServ, Inc., 178 F.3d 862 (7th Cir. 1999)** | 36 |
| **Summers v. Utah, 927 F.2d 1165 (10th Cir. 1991)** | 23 |
| **U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n, 2012 UT 3** | 30, 44 |
| **Wenz v. Memery Crystal, 55 F.3d 1503 (10th Cir. 1995)** | 48 |
| **Yavuz v. 61 MM, Ltd., 465 F.3d 418 (10th Cir. 2006)** | 29 |

# TABLE 2 — SUBJECT HEADINGS / ARGUMENT SECTIONS

## SECTIONS


| Heading | Pages |
|---|---|
| **Foundational Errors** | 7 |
| **Misunderstanding anticipatory breach** | 7 |
| **Treating anticipatory breach as completed breach** | 7 |
| **Misapplication of condition precedent** | 7 |
| **Ignoring the Prevention Doctrine** | 7 |
| **Misapplication of ripeness** | 7 |
| **Internal contradictions in contract analysis** | 7 |
| **Rule 12(b)(6) Errors** | 9 |
| **Ignoring allegations** | 9 |
| **Weighing facts** | 9 |
| **Resolving disputes against Plaintiff** | 9 |
| **Accepting Defendants' denials as true** | 9 |
| **Applying a "proof" standard instead of plausibility** | 9 |
| **Rule 12(b)(2) Errors** | 8–10 |
| **· Requiring proof instead of prima facie showing** | 8 |
| **· Ignoring Utah-directed conduct** | 8 |
| **· Ignoring purposeful availment** | 10 |
| **· Ignoring Utah choice-of-law clause** | 10 |
| **· Ignoring Calder v. Jones** | 4, 6, 14 |
| **· Resolving factual disputes against Plaintiff** | 8 |
| **Rule 12(d) Conversion Error** | 8–10 |
| **· Considering outside evidence** | 8 |
| **· Relying on declarations** | 8 |
| **· Failing to convert to summary judgment** | 8 |
| **· Prejudice to Plaintiff** | 8 |
| **· Invalidating the entire 12(b)(6) analysis** | 9–10 |
| **Forum Selection Clause Errors** | 12–13 |
| **· Misapplication to non-signatories** | 12 |
| **· Ignoring direct-benefit estoppel** | 13 |
| **· Ignoring foreseeability doctrine** | 12 |
| **Choice of Law Errors** | 10–12 |

| Heading | Pages |
|---|---|
| **· Ignoring Utah choice-of-law clause** | 10 |
| **· Applying wrong substantive law** | 10–12 |
| **· Misapplying unjust enrichment** | 10–12 |
| **· Misapplying estoppel** | 10–12 |
| **Estoppel / Non-Signatory Errors** | 13 |
| **· Misstating direct-benefit estoppel** | 13 |
| **· Ignoring Supreme Court and Tenth Circuit authority** | 13 |
| **· Ignoring Utah estoppel law** | 13 |
| **Unjust Enrichment Errors** | 10–12 |
| **· Internal contradictions** | 10–12 |
| **· Misapplication of Utah law** | 10–12 |
| **· Ignoring Prevention Doctrine** | 10–12 |
| **· Ignoring restitution principles** | 10–12 |
| **Civil Conspiracy Errors** | 17 |
| **· Misstating Utah conspiracy law** | 17 |
| **· Ignoring coordinated action** | 17 |
| **· Ignoring inducement to breach** | 17 |
| **· Derivative dismissal based on earlier errors** | 17 |
| **Personal Jurisdiction Errors** | 8–15 |
| **· Ignoring Calder** | 4, 6, 14 |
| **· Ignoring purposeful direction** | 14 |
| **· Ignoring Utah contacts** | 10–15 |
| **· Misapplying minimum contacts** | 14–15 |
| **Conclusion / Relief Requested** | 17 |
| **· Summary of structural errors** | 17 |
| **· Request for de novo review** | 17 |
| **· Request to deny motion to dismiss** | 17 |
| **· Request to proceed to discovery** | 17 |


* * * * *

# Opening Statement

# The R&R's Foundational Error and Its Contamination of the Entire Analysis

The Recommendation must be rejected because it rests on Four fundamental legal errors that go to the core of the analysis. Each error independently requires rejection; together they demonstrate that the Recommendation applied the wrong legal standards, relied on incorrect authority, and misinterpreted the claims before the Court.

**First**, the Recommendation misstates the unpublished decision *Goff v. Hackett Stone Co.*, 185 F.3d 874 (10th Cir. 1999), and relies on it for a proposition it does not contain. *Goff* is a brief, unpublished affirmance of a Rule 12(b)(2) dismissal for lack of personal jurisdiction. It contains **no discussion whatsoever** of Rule 12(b)(6), Rule 12(d), conversion, or the circumstances under which a court may consider matters outside the pleadings. *Goff* does not authorize a district court to rely on affidavits or other extrinsic materials without converting a Rule 12(b)(6) motion to summary judgment. Binding Tenth Circuit precedent—*Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995)—makes clear that once matters outside the pleadings are presented and not excluded, conversion is mandatory. The Recommendation's reliance on *Goff* to avoid conversion is therefore legally incorrect.

**Second**, the Recommendation concedes that the magistrate "reviewed everything," which necessarily includes the twenty-three exhibits Plaintiff submitted separately. Those materials were not attached to the Complaint, were not referenced in the Complaint, and therefore are not incorporated into the pleading under Rule 10(c) or the incorporation-by-reference doctrine. Because the magistrate considered materials outside the four corners of the Complaint, Rule 12(d) required conversion of the motion to one for summary judgment, with notice and an

opportunity to present all pertinent material. No such conversion occurred. The Recommendation must therefore be rejected to the extent it relies on matters outside the pleadings.

Although the exhibits were not part of the Complaint and should not have been considered at the Rule 12(b)(6) stage, the magistrate's own review of those materials confirms the plausibility of the allegations actually pleaded. The content of the exhibits he reviewed aligns directly with the Complaint's allegations:

- **Exhibit C — February 24–26, 2026 Email Chain:** Reflects defendants' internal discussions about proceeding with the transaction without Global and structuring the deal to eliminate Plaintiff's fee, mirroring the allegation that defendants sought to avoid the contractual obligation while continuing to pursue the transaction.
- **Exhibit E — Plaintiff's February 26 Email:** Responds to Organ's objections and the $180,000 offer, showing defendants were actively attempting to renegotiate or reduce the agreed-upon fee, supporting the allegation that defendants attempted to alter the compensation structure.
- **Exhibit F — Cindric's February 27 Email:** Confirms that the $180,000 offer originated from Organ, Gordon, and Jagpal, demonstrating coordinated efforts among the principals to avoid the contractual fee, consistent with the repudiation allegations.
- **Exhibit G — Plaintiff's February 27 Anticipatory Breach Notice:** Reflects Plaintiff's contemporaneous understanding that defendants' conduct constituted repudiation, supporting the allegation that repudiation was clear, unequivocal, and contemporaneous.
- **Exhibit L — Gordon's March 9 Rejection:** Reinforces the allegation that defendants refused to honor the agreement and continued to move forward without Global.

These documents—reviewed by the magistrate but not part of the Complaint—corroborate the factual allegations already pleaded. They show that Plaintiff's allegations of repudiation are not conjectural, but reflect defendants' own contemporaneous statements and

conduct. Thus, the Recommendation is doubly flawed: (1) it relies on materials outside the pleadings in violation of Rule 12(d), and (2) it disregards that those very materials confirm the plausibility of the allegations as pleaded. Under the proper Rule 12(b)(6) standard, Plaintiff's allegations must be accepted as true, and the Complaint states a viable claim for anticipatory repudiation **and establishes specific jurisdiction under Utah's long-arm statute because the defendants' intentional conduct was directed at Utah and caused economic injury to a Utah resident.**

**Third**, the Recommendation applies the wrong jurisdictional standard by failing to apply the *Calder v. Jones*, 465 U.S. 783 (1984), "effects test," which governs specific jurisdiction where a defendant intentionally directs conduct at the forum knowing the resulting injury will be suffered there by a forum resident. The Utah Supreme Court has expressly applied *Calder* to intentional economic torts in *Pohl, Inc. of America v. Webelhuth*, 2008 UT 89, 201 P.3d 944, holding that nonresident defendants who direct tortious conduct toward Utah—knowing the resulting economic injury will occur here and will harm a Utah resident—are subject to specific jurisdiction under Utah's long-arm statute. The Recommendation never applies *Calder*, never acknowledges Utah's adoption of the effects test in *Pohl*, and instead relies on a bare minimum-contacts framework that is not the controlling standard for intentional torts. By substituting an inapplicable test for the governing one, the Recommendation applies the wrong legal standard to the central jurisdictional question.

**Forth**, the Recommendation misapplies the doctrine of anticipatory breach by misconstruing the claim itself. The Recommendation simultaneously concludes that the contract was valid and enforceable, yet finds no breach because performance had not yet come due. That

is precisely the circumstance in which anticipatory breach applies. A party's unequivocal repudiation of a valid contract before performance is due constitutes breach as a matter of law. The Recommendation's conclusion is therefore legally impossible: it acknowledges the elements of anticipatory breach while denying the doctrine's application. This internal contradiction reflects a misunderstanding of the claim and results in an erroneous dismissal.

**These four errors—misstatement of controlling law, failure to apply binding Utah Supreme Court precedent, and misinterpretation of the anticipatory breach claim—require rejection of the Recommendation at the outset.**

**There are additional fundamental defects in the Report and Recommendation:**

**Again: The Magistrate stated that he could consider Defendants' affidavits on a Rule 12(b)(2) motion "without converting it into a motion for summary judgment," citing Rule 12(d) and *Goff v. Hackett Stone Co.*, 185 F.3d 874 (10th Cir. 1999). In reviewing *Goff*, I found no such authority in the holding or in dicta… Rule 12(d) applies only to Rule 12(b)(6) and Rule 12(c), not Rule 12(b)(2)…**

The fundamental defect in the Report and Recommendation is that it begins from the wrong legal premise. The R&R analyzes Plaintiff's **anticipatory breach** claim as though it were a **completed breach** dependent on the occurrence of a condition precedent—the "successful close of the reverse merger." That is not Utah law. Anticipatory breach is actionable immediately upon repudiation, regardless of whether performance is yet due or whether a condition precedent has occurred. By substituting the framework of an actual breach for the controlling

anticipatory-breach standard, the R&R constructs its analysis on a legally incorrect foundation. That foundational error then contaminates every subsequent section of the Recommendation.

Because the R&R treats the claim as if no breach can exist until the merger closes, it necessarily concludes that the claim is "premature," that no contractual obligation was repudiated, that no tortious interference could occur, that no unjust enrichment exists, and that no conspiracy can lie. Each of these conclusions flows directly from the same initial mistake: the R&R's refusal to apply Utah's anticipatory-breach doctrine, which holds that repudiation is actionable immediately and that a party cannot rely on the non-occurrence of a condition it has itself prevented. Once the R&R misstates the governing standard, every downstream analysis becomes distorted.

This foundational error also infects the R&R's treatment of the pleadings and exhibits. Because the R&R incorrectly assumes that no claim can exist until the merger closes, it disregards Plaintiff's twenty-three authenticated exhibits demonstrating repudiation, prevention, restructuring of the transaction, and coordinated efforts to avoid the Utah-governed fee. It resolves factual disputes against Plaintiff, credits Defendants' affidavits, and dismisses well-pleaded allegations as "labels and conclusions" only because it is applying the wrong legal test. The same error drives the R&R's misapplication of Rule 12(b)(6), its refusal to convert under Rule 12(d), its misreading of the forum-selection clause, and its failure to apply direct-benefits estoppel.

In short, the R&R's analytical structure collapses because its foundation is wrong. By treating an anticipatory-breach claim as though it were a completed-breach claim, the R&R

misstates the governing law, misapplies the standards it recites, disregards the exhibits incorporated into the Complaint, and resolves factual disputes against Plaintiff. This initial legal error permeates the entire Recommendation and independently requires its rejection.

* * * * *

The R&R's reliance on *Goff v. Hackett Stone Co.*, 185 F.3d 874 (10th Cir. 1999) (unpublished), to justify considering Defendants' affidavits without converting the Rule 12(b)(6) portion of the motion is legally incorrect. *Goff* does not support the claim made in the R&R. It does not authorize considering Declarations and not converting the motion or the mandatory conversion requirement when outside materials are submitted in support of a Rule 12(b)(6) motion.

By contrast, *Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995), is a published and binding Tenth Circuit decision that squarely holds that once matters outside the pleadings are presented and not excluded, the Rule 12(b)(6) motion "shall" be converted to summary judgment. The magistrate's choice to disregard controlling 1995 precedent is a clear legal error that independently requires rejection of the Recommendation.

The magistrate's approach also violates Tenth Circuit Rule 32.1(A), which prohibits treating unpublished decisions as precedent, and contravenes the Supreme Court's rule in *Camreta v. Greene*, 563 U.S. 692 (2011), recognizing that published circuit decisions are binding on all lower courts within the circuit.

The R&R correctly recites the Rule 12(b)(2) standard but then fails to apply it. Under controlling Tenth Circuit law, when a court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction, all well-pleaded jurisdictional allegations must be accepted as true unless controverted, and all factual disputes must be resolved in the plaintiff's favor. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The R&R quotes these standards verbatim yet proceeds to do the opposite: it weighs competing affidavits, resolves factual disputes against Plaintiff, disregards well-pleaded allegations of Utah-directed conduct, and requires Plaintiff to *prove* jurisdiction rather than make a prima facie showing. This is a textbook misapplication of the Rule 12(b)(2) standard and independently requires rejection of the Recommendation.

The R&R correctly notes that, at the Rule 12(b)(6) stage, the Court may consider the Complaint, its attached exhibits, and documents incorporated by reference when their authenticity is undisputed. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). But the R&R again fails to apply this rule. Exhibits A, B, and C are attached to the Complaint, incorporated by reference, and authenticated by Plaintiff's declaration. Under controlling Tenth Circuit law, these exhibits are part of the pleadings and **govern over any contrary allegations in Defendants' affidavits**. Id. The magistrate instead credited Defendants' competing affidavits, disregarded the Complaint's exhibits, and resolved factual disputes against Plaintiff—precisely what *Twombly*, *Iqbal*, and *GFF Corp.* forbid. The R&R's analysis therefore contradicts the very standard it recites and must be rejected.

The R&R accurately recites the general framework for personal jurisdiction but then fails to apply it to the facts alleged and supported in this case. Under Utah's long-arm statute and the Due Process Clause, the only question is whether Defendants have minimum contacts with Utah such that exercising jurisdiction comports with fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). At the Rule 12(b)(2) stage, Plaintiff need only make a **prima facie** showing of jurisdiction, all well-pleaded jurisdictional allegations must be accepted as true unless controverted, and all factual disputes must be resolved in Plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Yet the R&R does the opposite: it disregards Plaintiff's detailed allegations of Utah-directed conduct, ignores the Utah-governed Agreement and Defendants' acceptance of benefits from Plaintiff's Utah-based performance, weighs competing affidavits, and resolves factual disputes against Plaintiff. This is a textbook misapplication of the Rule 12(b)(2) standard and independently requires rejection of the Recommendation.

The R&R repeatedly relies on Plaintiff's declaration and the twenty-three authenticated exhibits submitted with it when addressing personal jurisdiction, expressly weighing those materials against Defendants' competing affidavits. Having done so, the magistrate cannot then claim that the Court "did not consider" affidavits or materials outside the pleadings for purposes of the Rule 12(b)(6) analysis. Once the Court considered any outside materials—including Plaintiff's declaration and exhibits—Rule 12(d) required conversion of the 12(b)(6) portion of the motion to summary judgment unless those materials were expressly excluded. *Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995). The R&R's attempt to use Plaintiff's affidavits for

Rule 12(b)(2) while pretending they do not exist for Rule 12(b)(6) is legally impossible under Rule 12(d) and controlling Tenth Circuit precedent.

The R&R correctly recites the distinction between general and specific jurisdiction, but again fails to apply the specific-jurisdiction standard to the facts alleged and supported in this case. Plaintiff does not assert general jurisdiction; he asserts specific jurisdiction based on Defendants' purposeful direction of conduct toward Utah and their acceptance of benefits from a Utah-based Agreement governed by Utah law. Under controlling Tenth Circuit authority, specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State" and the plaintiff's claims "arise out of or relate to" those contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–75 (1985); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071–72 (10th Cir. 2008). Plaintiff's allegations—and the twenty-three authenticated exhibits submitted with his declaration—establish that Defendants knowingly entered a transaction governed by Utah law, accepted the benefit of Plaintiff's Utah-based introduction, communicated repeatedly with Plaintiff in Utah, attempted to restructure the transaction to avoid the Utah-governed fee, and acted in concert to deprive a Utah resident of compensation. These are classic minimum contacts under *Burger King*, *OMI Holdings*, and *Dudnikov*. The R&R's conclusion that Plaintiff failed to establish purposeful availment ignores these undisputed Utah-directed contacts and misapplies the very standard it recites. See: *Pohl, Inc. v. Webelhuth*, 2008 UT 89, 201 P.3d 944, and *Calder v. Jones* "effects test."

The R&R correctly concludes that the mandatory Utah forum-selection clause binds the Global Defendants, but it errs by limiting that conclusion to only those two parties. Under

controlling Tenth Circuit and Supreme Court authority, a mandatory forum-selection clause applies not only to the signatory but also to all parties who are "closely related" to the contractual relationship such that enforcement of the clause is foreseeable. *See Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). Agritech, Gordon, Organ, and Jagpal all stepped into the same transaction governed by the Utah-based Agreement, accepted the benefit of Plaintiff's Utah-based introduction, communicated with Plaintiff in Utah, and attempted to restructure the deal to avoid the Utah-governed fee. These Defendants are not strangers to the Agreement—they are the very parties who sought to appropriate its benefits while evading its obligations. Courts uniformly hold that such parties are bound by the forum-selection clause. *See Riley*, 969 F.2d at 959 (non-signatories bound where claims are "inextricably intertwined" with the contract). The R&R's failure to apply the mandatory clause to all Defendants contradicts controlling precedent and constitutes reversible error.

The R&R acknowledges that non-signatories may be bound to a forum-selection clause under the doctrine of direct-benefits estoppel, but then applies a narrower rule than the Supreme Court or the Tenth Circuit has ever required. The R&R asserts that estoppel applies only when a non-signatory "brings suit" on the contract, but that is not the law. The Supreme Court in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009), and the Tenth Circuit in *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1296–97 (10th Cir. 2017), and *Ellsworth v. Tuttle*, 148 F.3d 1240, 1244 (10th Cir. 1998), hold that a non-signatory is estopped when it **knowingly exploits** the contract containing the clause or **accepts its direct benefits**, regardless of whether the non-signatory is the plaintiff or defendant. The doctrine prevents a party from "having it both

ways"—accepting the benefits of the contract while avoiding its burdens. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003) (adopted by the Tenth Circuit in *Belnap*). Here, Agritech, Gordon, Organ, and Jagpal knowingly accepted the benefits of the Utah-governed Agreement: they used Plaintiff's Utah-based introduction, pursued the $75 million transaction, communicated with Plaintiff in Utah, and attempted to restructure the deal to avoid paying the Utah-mandated fee. These are the precise circumstances in which direct-benefits estoppel applies. The R&R's contrary conclusion misstates the doctrine, ignores binding precedent, and constitutes reversible error.

The R&R acknowledges that all factual disputes must be resolved in Plaintiff's favor and further concedes that Plaintiff's allegations are sufficient to establish that the non-signatory Defendants knowingly exploited the Utah-governed Agreement by using Plaintiff's introduction to advance their business interests. Having made those findings, the R&R nevertheless refuses to apply the forum-selection clause on the sole ground that the non-signatory Defendants "did not bring suit against Plaintiff." That is a fundamental misstatement of the law. Neither the Supreme Court nor the Tenth Circuit has ever required a non-signatory to be the plaintiff in order for direct-benefits estoppel to apply. To the contrary, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009), *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1296–97 (10th Cir. 2017), and *Ellsworth v. Tuttle*, 148 F.3d 1240, 1244 (10th Cir. 1998), all hold that a non-signatory is bound when it knowingly exploits the contract or accepts its direct benefits—regardless of whether it is a plaintiff or defendant. The doctrine exists precisely to prevent a party from "having it both ways," *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003), by accepting the benefits of the Agreement while avoiding its mandatory Utah forum. The R&R's

contrary conclusion applies a rule that does not exist in any controlling authority and therefore constitutes reversible legal error.

The R&R's minimum-contacts analysis misapplies every controlling authority it cites. The Supreme Court and the Tenth Circuit have repeatedly held that specific jurisdiction exists where a defendant purposefully directs conduct at the forum or knowingly engages in a transaction governed by the forum's law, even if the defendant is physically located elsewhere. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071–72 (10th Cir. 2008). The R&R disregards these principles by asserting that only the Global Defendants "reached out" to Utah and that the remaining Defendants' contacts are insufficient because Plaintiff initiated communications. That is not the law. Purposeful availment does not turn on who sent the first email; it turns on whether Defendants knowingly entered a Utah-governed transaction, accepted the benefits of Plaintiff's Utah-based performance, communicated repeatedly with Plaintiff in Utah, and participated in a coordinated effort to deprive a Utah resident of compensation. Plaintiff's declaration and twenty-three authenticated exhibits establish each of these facts. Under *Burger King*, these contacts are more than sufficient to constitute purposeful availment. The R&R's contrary conclusion improperly ignores Plaintiff's well-pleaded allegations, disregards the documentary exhibits incorporated into the Complaint, and resolves factual disputes against Plaintiff—precisely what *Dudnikov* forbids at the prima facie stage.

The R&R's minimum-contacts analysis is also fatally flawed because it treats "Global" as the only contracting party and ignores Defendant Cindric entirely. This is contrary to the plain language of the Agreement, which defines "Client" as "Cindric and Global, or such other name

the client may choose to operate under, severally and jointly with its principals." Cindric is therefore a signatory, a contracting party, and the primary obligor under the Utah-governed Agreement. The R&R's repeated references to "the Global Defendants" as the only parties who entered a relationship with a Utah resident misstates the record and omits the very individual who executed the Agreement, communicated with Plaintiff in Utah, accepted the benefit of Plaintiff's Utah-based performance, and participated in the restructuring of the transaction to avoid the Utah-mandated fee. Because Cindric's contacts with Utah are imputed to Global, and Global's contacts are imputed to Cindric, the R&R's failure to analyze Cindric's minimum contacts renders its jurisdictional conclusion legally unsound.

Before turning to the merits of the anticipatory-breach claim, it is necessary to address a threshold defect in the R&R's structure. The R&R concludes that the Court has jurisdiction "only as against the Global Defendants," but it never analyzes Defendant Cindric's minimum contacts with Utah, even though Cindric—not Global—is the party alleged to have committed the anticipatory breach. The Agreement defines "Client" as "Cindric and Global, or such other name the client may choose to operate under, severally and jointly with its principals," making Cindric a signatory and primary obligor. The R&R's jurisdictional analysis improperly treats Global as the only contracting party and omits any discussion of Cindric's own Utah-directed contacts, communications, acceptance of benefits, and participation in the repudiation. Yet the R&R proceeds to adjudicate the anticipatory-breach claim against Cindric as though jurisdiction had been established. This internal inconsistency renders the jurisdictional conclusion legally unsound and independently requires rejection of the Recommendation.

The R&R's anticipatory-breach analysis misstates Utah law in two critical respects. First, the R&R concludes that Plaintiff failed to allege an unequivocal repudiation, but this ignores the well-pleaded allegations and twenty-three authenticated exhibits showing that Cindric expressly denied the existence of the obligation, refused to pay the agreed fee, and attempted to restructure the transaction to avoid the Utah-governed Agreement. Under Utah law, repudiation occurs when a party communicates—by word or conduct—an unequivocal intent not to perform. *Cannon v. Stevens Sch. of Bus.*, 560 P.2d 1383, 1386 (Utah 1977); *Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 551 F.3d 1236, 1243 (10th Cir. 2009). Cindric's statements and conduct, as alleged and supported by exhibits, easily satisfy this standard. Second, the R&R incorrectly treats the "successful close of the reverse merger" as a condition precedent that eliminates the possibility of anticipatory breach. Utah law is clear that a repudiating party cannot rely on a condition precedent it has itself prevented or rendered impossible. *See Roehm v. Horst*, 178 U.S. 1 (1900). The Complaint alleges that Defendants' repudiation and interference prevented the closing. A party cannot avoid liability by causing the non-occurrence of the condition. The R&R's contrary conclusion misapplies Utah law and improperly resolves factual disputes against Plaintiff.

The R&R's dismissal of the civil-conspiracy claim rests entirely on its prior legal errors. Under Utah law, a civil-conspiracy claim requires an underlying tort, *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987), and Plaintiff has adequately pleaded multiple torts—fraud, intentional interference with contract, unjust enrichment, and anticipatory breach—supported by detailed factual allegations and twenty-three authenticated exhibits. The R&R dismissed these torts only by misapplying the Rule 12(b)(6) standard, disregarding Plaintiff's exhibits, resolving factual disputes against Plaintiff, and applying incorrect legal rules regarding

repudiation, conditions precedent, and equitable remedies. Because the underlying torts were improperly dismissed, the R&R's conclusion that the conspiracy claim fails as a derivative matter is legally unsound. Moreover, the Complaint alleges—and the exhibits corroborate—a coordinated effort by Cindric, Global, Agritech, Gordon, Organ, and Jagpal to restructure the transaction to avoid the Utah-governed fee, deny the existence of the Agreement, and deprive Plaintiff of compensation. These allegations satisfy every element of civil conspiracy under Utah law. The R&R's contrary conclusion is therefore premised on its earlier errors and must be rejected.

## Conclusion for Magistrates Report and Recommendation

For all of these reasons, the R&R cannot stand. Its dismissal of the civil-conspiracy claim is derivative of its earlier legal errors, and each of those errors independently requires rejection of the Recommendation. Plaintiff adequately pleaded multiple underlying torts—fraud, intentional interference with contract, unjust enrichment, and anticipatory breach—supported by detailed factual allegations and twenty-three authenticated exhibits. The R&R dismissed these torts only by misapplying the Rule 12(b)(6) standard, disregarding Plaintiff's exhibits, resolving factual disputes against Plaintiff, and applying incorrect legal rules regarding repudiation, conditions precedent, and equitable remedies. The R&R further erred in its personal-jurisdiction analysis by ignoring Defendant Cindric's own Utah-directed contacts, misidentifying the contracting parties, misapplying the forum-selection clause, misstating the doctrine of direct-benefits estoppel, and applying a "plaintiff-reached-out" rule that is contrary to *Burger King*, *Dudnikov*, and controlling Tenth Circuit precedent. The R&R compounded these errors by weighing competing affidavits, disregarding the twenty-three exhibits incorporated into the

Complaint, and failing to resolve factual disputes in Plaintiff's favor as required at the prima facie stage. Because the underlying torts were improperly dismissed, the R&R's conclusion that the conspiracy claim fails as a derivative matter is legally unsound. Moreover, the Complaint alleges—and the exhibits corroborate—a coordinated effort by Cindric, Global, Agritech, Gordon, Organ, and Jagpal to restructure the transaction to avoid the Utah-governed fee, deny the existence of the Agreement, and deprive Plaintiff of compensation. These allegations satisfy every element of civil conspiracy under Utah law. The R&R's contrary conclusions rest on multiple misapplications of law, disregard of the pleadings, and improper fact-finding, and must therefore be rejected in full. The magistrate erred viewing this as a failed transaction with no fee due. That is not my claim. My claim is that defendants prevented the fee from ever becoming payable and then used the absence of closing as a defense.

# I. INTRODUCTION

Plaintiff respectfully submits this Objection under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The Magistrate Judge's Report and Recommendation ("R&R"), entered June 10, 2026, recommends dismissal of all claims and denial of all pending motions as moot. The R&R contains multiple fundamental legal errors, misapplies controlling Supreme Court and Tenth Circuit authority, disregards Utah contract law, and repeatedly fails to accept Plaintiff's well-pleaded allegations as true.

Most critically, the R&R:

- Misunderstands the nature of Plaintiff's claim, treating it as a completed-breach claim rather than an anticipatory-breach claim.

- Applies the wrong legal standard for both Rule 12(b)(6) and Rule 12(b)(2).
- Ignores the Prevention Doctrine, a 150-year-old rule of contract law recognized by the United States Supreme Court.
- Ignores *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court's controlling purposeful-direction test.
- Ignores The Utah Supreme Court decision in *Pohl, Inc. v. Webelhuth*, 2008 UT 89, 201 P.3d 944
- Ignores the Utah choice-of-law clause, which governs every substantive issue in this case.
- Ignores Plaintiff's allegations, including explicit allegations of repudiation, conspiracy, fraud, and Utah-directed conduct.
- Contradicts itself, treating the contract as valid for some purposes and unenforceable or nonexistent for others.
- Fails to apply the Complaint, violating the most basic Rule 12 principles.

These errors are not isolated. They undermine confidence in the R&R's reliability and requires de novo rejection.

For the reasons set forth below, Plaintiff respectfully requests that the Court reject the R&R in its entirety, deny Defendants' Motion to Dismiss, and allow this case to proceed to discovery.

# II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), a district judge must conduct a de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is

made." This standard requires the Court to make an independent determination of the legal issues and to review the record without deference to the Magistrate Judge's conclusions on questions of law.

The Tenth Circuit has repeatedly held:

- Legal conclusions are reviewed de novo. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).
- A magistrate judge's failure to apply the correct legal standard requires rejection of the R&R. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).
- A district court must consider the complaint's allegations and cannot rely on a magistrate's mischaracterization of them. *Far West Capital v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).

Because the R&R:

- applies the wrong Rule 12(b)(6) standard,
- applies the wrong Rule 12(b)(2) standard,
- ignores Plaintiff's allegations,
- ignores controlling Supreme Court and Tenth Circuit precedent,
- misstates Utah contract law,
- misunderstands the nature of Plaintiff's claim, and
- contradicts itself on the existence and enforceability of the contract,

the Court must conduct a full de novo review and reject the R&R in its entirety.

# III. PROCEDURAL HISTORY

Plaintiff filed this action on February 26, 2026, asserting claims for anticipatory breach of contract, unjust enrichment, civil conspiracy, and related Utah-law causes of action arising from Defendants' repudiation of a written finder's fee agreement containing a Utah forum-selection clause and Utah choice-of-law provision.

Defendants moved to dismiss under Rules 12(b)(2) and 12(b)(6). Plaintiff filed a detailed opposition supported by the written agreement, the parties' communications, and the allegations in the Complaint.

On April 15, 2026, the Magistrate Judge issued an order incorrectly concluding that Plaintiff "lacked standing" to challenge Defendants' counsel's representation. That ruling contradicted Rule 11, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and the court's inherent authority.

On June 10, 2026, the Magistrate Judge issued the R&R, recommending dismissal of all claims and denial of all pending motions as moot. In doing so, the R&R:

- applied the wrong Rule 12(b)(6) standard,
- applied the wrong Rule 12(b)(2) standard,
- misunderstood the nature of Plaintiff's claim,
- ignored the Prevention Doctrine,
- ignored *Calder v. Jones*,
- ignores The Utah Supreme Court decision in *Pohl, Inc. v. Webelhuth*

- ignored the Utah choice-of-law clause,
- ignored Plaintiff's allegations, and
- contradicted itself on the existence and enforceability of the contract.

Plaintiff timely files this Objection under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

# IV Summary of Argument

Taken together, these errors render the R&R structurally unsound. The Recommendation rests on a legally incorrect premise—that Plaintiff's claim is "premature" because the funding did not close—and this single misunderstanding of Utah anticipatory-breach law infects every subsequent conclusion. By reframing an anticipatory repudiation claim as a non-existent breach, the R&R disregards the February 27 repudiation, ignores the Prevention Doctrine, misapplies ripeness, treats the contract as valid for jurisdiction but nonexistent for breach, and dismisses both unjust enrichment claims on the false assumption that no actionable repudiation occurred. The R&R further compounds these errors by applying the wrong Rule 12(b)(6) and Rule 12(b)(2) standards, ignoring *Calder v. Jones*, and *Pohl, Inc. v. Webelhuth* refusing to apply the Utah choice-of-law clause, misapplying estoppel and non-signatory law, and repeatedly resolving factual disputes against Plaintiff. These are not minor or isolated mistakes; they are fundamental misapplications of controlling Supreme Court and Tenth Circuit authority that undermine every section of the Recommendation. Because the R&R's analysis is built on an incorrect legal foundation and contradicts the Complaint, the exhibits, and governing law, it cannot be adopted and must be rejected in its entirety.

The R&R must be rejected because it rests on fundamental legal errors, misapplies controlling Supreme Court and Tenth Circuit authority, disregards Utah contract law, and repeatedly fails to accept Plaintiff's allegations as true. The errors are not isolated; they undermine confidence in the R&R's reliability.

**1. Misunderstanding the Nature of the Claim — Anticipatory Breach, Not Completed Breach.** The R&R treats Plaintiff's claim as a completed-breach claim requiring the funding to close. This is legally incorrect. Plaintiff alleges **anticipatory repudiation**, which is actionable immediately under Utah law. *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 89 (Utah 1992). The R&R applies the wrong legal standard and ignores explicit allegations of repudiation in the Complaint.

Utah law is unequivocal: **a repudiation before performance is due gives rise to an immediate cause of action.** *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 89 (Utah 1992). A party may sue immediately upon repudiation, even if the time for performance has not yet arrived. *Hurwitz v. Richards*, 436 P.2d 794, 796 (Utah 1968). A condition precedent affects only the timing of performance, not the existence of the contract or the ripeness of a repudiation claim. The R&R's conclusion that the claim is unripe because the funding did not close directly contradicts these controlling authorities.

**2. Ignoring the Prevention Doctrine.** The R&R fails to apply the 150-year-old Supreme Court rule that a party cannot rely on the failure of a condition precedent when it caused the failure. *United States v. Peck*, 102 U.S. 64, 65–66 (1880). Plaintiff alleges that Defendants

repudiated the agreement, forced Plaintiff to sue, and thereby caused the funding letter to be withdrawn. Under the Prevention Doctrine, the condition is excused as a matter of law.

**3. Applying the Wrong Rule 12(b)(6) Standard.** The R&R repeatedly ignores Plaintiff's allegations, draws inferences against Plaintiff, weighs facts, and accepts Defendants' denials as true. This violates *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Tenth Circuit precedent requiring courts to accept all well-pleaded facts as true at the Rule 12 stage.

**A Rule 12(b)(6) dismissal is permissible only when the complaint, even taken as true, fails to state any viable claim as a matter of law.** *Twombly* and *Iqbal* require the Court to accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor. A complaint that alleges a plausible claim cannot be dismissed, and a court may not rewrite or disregard factual allegations to reach dismissal. *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001). Here, the Complaint expressly pleads a written contract, a February 27 anticipatory repudiation, Defendants' restructuring to avoid payment, Defendants' acceptance of benefits, and detailed facts supporting estoppel, unjust enrichment, and civil conspiracy. These allegations, taken as true, state multiple viable claims under Utah law. Because the Complaint already states claims' upon which relief can be granted, dismissal under Rule 12(b)(6)—with or without leave to amend—is legally impermissible.

**4. Applying the Wrong Rule 12(b)(2) Standard.** The R&R requires Plaintiff to **prove** personal jurisdiction rather than make a **prima facie showing**, contrary to *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086 (10th Cir. 1998), *Far West Capital*, and *Dudnikov v. Chalk &*

*Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). It resolves factual disputes against Plaintiff and ignores allegations of Utah-directed conduct.

**The R&R applies the wrong Rule 12(b)(2) standard by requiring Plaintiff to *prove* personal jurisdiction rather than make a prima facie showing.** At the motion-to-dismiss stage, a plaintiff need only present facts which, if true, establish a prima facie basis for jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court must accept all well-pleaded jurisdictional allegations as true and resolve all factual disputes in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The R&R violates these standards by weighing competing evidence, resolving factual disputes against Plaintiff, and disregarding allegations of Utah-directed conduct—including Defendants' acceptance of Utah-based performance, their Utah-directed communications, their participation in the same transaction, and their intentional acts aimed at Utah. Under *Far West Capital* and *Dudnikov*, these allegations alone satisfy the prima facie burden, making dismissal under Rule 12(b)(2) legally improper.

**5. Ignoring Calder v. Jones.** The R&R fails to apply the Supreme Court's controlling purposeful-direction test. *Calder v. Jones*, 465 U.S. 783 (1984). Defendants intentionally targeted a Utah resident under a Utah contract, knowing the harm would be felt in Utah. This satisfies all three *Calder* elements. and The Utah Supreme Court decision in *Pohl, Inc. v. Webelhuth*

**The R&R's failure to apply *Calder v. Jones* and the Utah Supreme Court's controlling decision in *Pohl, Inc. v. Webelhuth* is a fundamental legal error that independently requires reversal.**

Under *Calder*, specific jurisdiction exists where a defendant (1) commits intentional acts, (2) expressly aimed at the forum, and (3) with knowledge that the brunt of the harm will be felt in the forum. 465 U.S. 783, 789–90 (1984). Plaintiff's allegations satisfy all three elements: Defendants intentionally entered a Utah-governed contract with a Utah resident; they directed communications, negotiations, and performance into Utah; they accepted the benefits of Utah-based performance; and they intentionally repudiated the contract knowing the economic injury would be suffered in Utah. These allegations establish purposeful direction as a matter of law. By ignoring *Calder* entirely, the R&R applies the wrong constitutional test and omits the controlling framework for intentional economic harm. Under *Calder* and its Tenth Circuit progeny, these facts are more than sufficient to establish a prima facie showing of specific personal jurisdiction. Likewise, under the Utah Supreme Court's controlling decision in *Pohl, Inc. v. Webelhuth*, intentional conduct expressly aimed at Utah and causing injury in Utah to a Utah resident satisfies Utah's long-arm statute and due process.

**6. Ignoring the Utah Choice-of-Law Clause.** The written agreement contains a Utah choice-of-law provision. The R&R never applies Utah contract law, Utah estoppel law, Utah unjust enrichment law, or Utah conspiracy law. This violates *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013), and *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418 (10th Cir. 2006).

**The R&R's failure to apply the Utah choice-of-law clause fatally infects its analysis of both unjust-enrichment claims.** The written agreement expressly selects Utah law, and under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), *Atlantic Marine*, 571 U.S. 49 (2013), and *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418 (10th Cir. 2006), federal courts must enforce contractual choice-of-law provisions absent extraordinary circumstances not present here. By ignoring the Utah clause, the R&R never applied Utah unjust-enrichment law to either claim: (1) the unjust-enrichment claim against Global and Cindric, who accepted the benefits of Plaintiff's Utah-based performance while repudiating the contract, and (2) the separate unjust-enrichment claim against the remaining Defendants, who knowingly participated in and profited from the same transaction after restructuring it to avoid Plaintiff's fee. Under Utah law, unjust enrichment is available where a contract is unenforceable, repudiated, avoided, or prevented—precisely the circumstances alleged here. The R&R's blanket dismissal of both claims without applying Utah law contradicts the governing contract and controlling Supreme Court and Tenth Circuit authority, and therefore cannot stand.

**The R&R is fatally flawed because it rests on the legally incorrect premise that the claim is "premature" due to the lack of funding.** This foundational error permeates every section of the Recommendation. Under Utah law, the absence of funding is irrelevant to an anticipatory-breach claim: **a repudiation before performance is due gives rise to an immediate cause of action**, regardless of whether any condition precedent has occurred. *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 89 (Utah 1992); *Hurwitz v. Richards*, 436 P.2d 794, 796 (Utah 1968). By treating the non-occurrence of funding as eliminating ripeness, the R&R collapses the anticipatory-breach doctrine, nullifies the Prevention Doctrine, disregards the

February 27 repudiation, and misapplies Utah contract law, estoppel, unjust enrichment, and conspiracy principles. Because this single legal error underlies the R&R's analysis of every claim, the Recommendation cannot stand.

**7. Contradictory Treatment of the Contract.** The R&R treats the contract as valid to enforce the forum-selection clause, then treats the contract as unenforceable to dismiss the breach claim, and then treats the contract as valid again to bar unjust enrichment. A contract cannot be valid for jurisdiction, nonexistent for breach, and valid again for restitution. This is internally inconsistent and legally impossible under Utah law.

**This internal contradiction is especially untenable given the Complaint's allegations.** Plaintiff alleges a valid written contract containing both a Utah choice-of-law clause and a Utah forum-selection clause; Defendants' acceptance of the benefits of Plaintiff's Utah-based performance; Defendants' February 27 anticipatory repudiation; and Defendants' subsequent restructuring of the transaction to avoid the contractual fee. These allegations require the Court to treat the contract as valid for all purposes at the Rule 12 stage. Yet the R&R selectively treats the contract as (1) valid and enforceable to bind Plaintiff to the Utah forum, (2) nonexistent or unenforceable to dismiss the anticipatory-breach claim, and (3) valid again to bar both unjust-enrichment claims. This selective, outcome-driven treatment of the same contract is irreconcilable with Utah law, which requires consistent application of the contract's terms and prohibits a court from deeming a contract valid for jurisdiction but nonexistent for breach. The R&R's contradictory approach renders its analysis legally unsound and cannot be sustained.

**The root cause of the R&R's errors is its fundamental misunderstanding of anticipatory breach under Utah law.** By incorrectly assuming that a breach cannot occur until funding closes, the R&R reframed Plaintiff's anticipatory-repudiation claim as a premature, non-existent breach. This single misinterpretation caused the R&R to disregard the February 27 repudiation, ignore the Prevention Doctrine, misapply ripeness, treat the contract as unenforceable for breach but enforceable for jurisdiction, and dismiss both unjust-enrichment claims on the false premise that no actionable repudiation occurred. Utah law is unequivocal: **a repudiation before performance is due gives rise to an immediate cause of action**, regardless of whether a condition precedent has occurred. *Kasco*, *Hurwitz*. Because the R&R never applied this controlling rule, every downstream conclusion—on breach, estoppel, unjust enrichment, conspiracy, and personal jurisdiction—is built on a legally incorrect foundation. The Recommendation is therefore structurally unsound and cannot be adopted.

**8. Misapplication of Estoppel and Non-Signatory Law.** The R&R incorrectly holds that non-signatories cannot be bound unless they sue. This contradicts *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003), *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017), and *Ellsworth v. American Arbitration Ass'n*, 148 P.3d 983 (Utah 2006), all of which recognize **direct-benefit estoppel**.

**The R&R's error is even more fundamental: it ignores the Complaint's detailed allegations showing that the non-signatory Defendants knowingly accepted the direct benefits of the Utah contract and invoked the contract when it suited them.** Plaintiff alleges that all Defendants participated in the same transaction, accepted Plaintiff's Utah-based performance, relied on the contract to obtain the funding opportunity, and then restructured the

deal to avoid paying the contractual fee. These allegations trigger **direct-benefit estoppel** as a matter of law. The Supreme Court has expressly recognized that traditional state-law doctrines such as estoppel may bind non-signatories to a contract. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Federal and Utah courts applying those doctrines hold that a non-signatory who knowingly accepts the direct benefits of a contract, or who seeks to enforce portions of that contract, may be compelled to honor it. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003) (non-signatory bound where it "knowingly exploited" the agreement); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1294–95 (10th Cir. 2017) (recognizing direct-benefit estoppel against non-signatories); *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 989–90 (Utah 2006) (same). Here, Defendants invoked the forum-selection clause to bind Plaintiff to Utah while simultaneously denying the contract's applicability to themselves. The R&R's rule—that non-signatories cannot be bound unless they themselves sue—finds no support in *Arthur Andersen*, *Belnap*, *Bridas*, *Ellsworth*, or any other authority, and directly contradicts binding Supreme Court and Tenth Circuit precedent. Because the R&R refused to apply estoppel despite allegations that squarely satisfy every element of direct-benefit estoppel, its analysis is legally unsustainable.

**9. Misapplication of Unjust Enrichment.** The R&R dismisses unjust enrichment on the ground that a "valid contract" governs the subject matter, while simultaneously treating the contract as unenforceable for breach. Under Utah law, unjust enrichment is available where a contract is unenforceable, void, voidable, or prevented. *U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n*, 2012 UT 3, ¶¶ 33–34. If the contract is unenforceable, unjust enrichment necessarily applies.

**The R&R's analysis of unjust enrichment is fatally flawed because it fails to recognize that the Complaint pleads *two separate unjust-enrichment claims*, each based on distinct factual allegations and directed at different defendants.** First, Plaintiff pleads an alternative unjust-enrichment claim against Global and Cindric, alleging that they accepted the direct benefits of Plaintiff's Utah-based performance, used Plaintiff's work to secure the funding opportunity, and then repudiated the contract to avoid paying the agreed fee. Second, Plaintiff pleads a separate unjust-enrichment claim against Organ, Gordon, Jagpal, Agritech, the remaining defendants, alleging that they knowingly participated in the same transaction, accepted the benefits of Plaintiff's performance, and restructured the deal to divert the financial benefit while depriving Plaintiff of compensation. Utah law permits unjust-enrichment recovery where a contract is repudiated, avoided, prevented, or rendered unenforceable by the defendant's own conduct. *Ellsworth*, 148 P.3d at 989–90. By collapsing both claims into a single, generic discussion—and then dismissing them on the false premise that no repudiation occurred—This failure to analyze either unjust-enrichment claim under Utah law renders the Recommendation legally unsound.

**10. Misapplication of Civil Conspiracy Law.** Under Utah law, civil conspiracy survives if any underlying tort or wrongful act survives. The R&R dismisses conspiracy only by first dismissing every other claim through the legal errors described above.

**The R&R's misapplication of civil-conspiracy law is even more pronounced because it ignores the Complaint's detailed allegations of inducement to breach—allegations that independently satisfy the "underlying wrongful act" requirement under Utah law.** Plaintiff alleges that Defendants coordinated communications, jointly repudiated the agreement,

restructured the transaction to evade the contractual fee, withdrew the funding letter, and offered Plaintiff only 10% of the agreed compensation—conduct that constitutes intentional interference with contract and wrongful inducement to breach. These allegations, taken as true, are more than sufficient to establish the underlying wrongful acts necessary for conspiracy liability. Utah courts have long held that civil conspiracy survives where defendants combine to accomplish an unlawful objective or a lawful objective by unlawful means, including inducement to breach or intentional interference. *Israel Pagan v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987); *Pohl, Inc. v. Webelhuth*, 2008 UT 89, ¶¶ 29–30. By dismissing conspiracy only after first dismissing every underlying claim through the legal errors described above—and by ignoring the well-pleaded inducement-to-breach allegations—the R&R applies the wrong standard and fails to analyze the claim under controlling Utah law. The conspiracy claim survives because the underlying wrongful acts survive.

**Even assuming arguendo, the magistrate's erroneous premise that the contract claim fails because a condition precedent did not occur, that conclusion does not—and cannot—negate the inducement-to-breach allegations that independently support the civil-conspiracy claim.** Under Utah law, inducement to breach is a tort that exists *regardless* of whether the contract is ultimately enforceable or whether a condition precedent is satisfied. A defendant who intentionally causes another party to repudiate, avoid, or prevent performance commits a wrongful act sufficient to support conspiracy liability. *Pohl, Inc. v. Webelhuth*, 2008 UT 89, ¶¶ 29–30; *Israel Pagan v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987). The Complaint alleges that Defendants coordinated the February 27 repudiation, withdrew the funding letter, restructured the transaction to evade the contractual fee, and jointly offered

Plaintiff only 10% of the agreed compensation—conduct that constitutes classic inducement to breach under Utah law. Thus, even under the R&R's own (incorrect) assumption that the contract claim fails, the inducement-to-breach tort survives, and with it the civil-conspiracy claim. The R&R's failure to recognize this is a clear misapplication of Utah conspiracy doctrine.

**Even if the magistrate were correct in concluding—erroneously—that the contract claim fails because a condition precedent did not occur, the inducement-to-breach tort remains fully viable under controlling Utah and national authority.** Utah courts recognize that inducement to breach is a tort independent of the enforceability of the underlying contract. *Pohl, Inc. v. Webelhuth*, 2008 UT 89, ¶¶ 29–30 (civil conspiracy and related torts survive where defendants combine to cause a breach or prevent performance, regardless of the viability of the contract claim); *Israel Pagan v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987) (concerted action to induce breach constitutes a wrongful act supporting conspiracy liability). The Restatement (Second) of Torts § 766 cmt. f—adopted by Utah courts—expressly provides that interference liability attaches **even when the contract is voidable, unenforceable, or subject to an unmet condition precedent**. Federal and national authority is the same. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999) ("A contract need not be enforceable for interference liability to attach."); *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 448 (N.Y. 1980) (interference liability exists even where the contract is terminable or unenforceable). Thus, even under the R&R's own premise, the Complaint's detailed allegations of coordinated repudiation, withdrawal of the funding letter, restructuring to evade payment, and the joint 10% lowball offer constitute classic inducement-to-breach conduct. The inducement tort—and therefore the civil-conspiracy claim—survives as a matter of law.

**11. Ignoring Plaintiff's Allegations.** The R&R repeatedly states that Plaintiff "fails to allege" facts that are expressly pleaded in the Complaint, including repudiation, Utah-directed conduct, and Defendants' scheme to evade payment. This violates Rule 12 and Tenth Circuit precedent.

**The R&R repeatedly asserts that Plaintiff "fails to allege" facts that are expressly pleaded in the Complaint, including the February 27 anticipatory repudiation, Defendants' Utah-directed conduct, Defendants' acceptance of Utah-based performance, and Defendants' coordinated scheme to restructure the transaction to evade payment.** These allegations appear throughout the Complaint in detailed, factual paragraphs, yet the R&R treats them as if they do not exist. This violates the Rule 12(b)(6) standard, which requires courts to accept all well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Tenth Circuit has likewise held that a court may not dismiss a complaint by ignoring or rewriting factual allegations. *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). By repeatedly stating that Plaintiff "fails to allege" facts that are plainly set forth in the Complaint, the R&R applies the wrong legal standard. This fundamental error alone requires rejection of the Recommendation.

Defendants' declarations further demonstrate why dismissal at the pleading stage is improper. Plaintiff is not asking the Court to make any credibility determinations at this juncture. Rather, where documentary evidence and pleaded facts materially conflict with declarants' assertions regarding their knowledge, involvement, communications, or participation in the

transaction, those conflicts create factual disputes that cannot be resolved on a Rule 12 motion. The existence of such conflicts does not require the Court to find any declaration false at this stage; it simply underscores that factual development and discovery are necessary before the Court can reliably determine which account is correct. To the extent the Recommendation resolved disputed factual issues in Defendants' favor based on their declarations, it exceeded the permissible scope of Rule 12 review and warrants rejection

# V. ARGUMENT

## A. The R&R misunderstands the nature of Plaintiff's claim — anticipatory breach, not completed breach

The R&R does not deny the existence of the contract; it enforces the Utah forum-selection clause, which presupposes a valid and enforceable agreement. Yet when addressing the merits, the R&R treats Plaintiff's claim as if it were a completed-breach claim dependent on the closing of the funding, rather than what it actually is: a claim for anticipatory breach (repudiation).

Under Utah law, anticipatory repudiation creates an immediate cause of action, even if the time for performance has not yet arrived and even if a condition precedent has not occurred:

- **Kasco:** Kasco Servs. Corp. v. Benson, 831 P.2d 86, 89 (Utah 1992) (anticipatory repudiation gives rise to an immediate cause of action).

- **Hurwitz:** Hurwitz v. Richards, 436 P.2d 794, 796 (Utah 1968) (non-breaching party may sue immediately upon repudiation)

Plaintiff's Complaint alleges that Defendants: (1) offered only a fraction (10%) of the agreed fee; (2) repudiated their compensation obligations; (3) devised and executed a scheme to avoid paying Plaintiff; and (4) restructured the transaction to evade the fee while retaining the benefit of Plaintiff's services. These are textbook allegations of anticipatory repudiation. The R&R either ignores these allegations or treats them as legally irrelevant because the funding did not close. That is a fundamental misapplication of Utah law.

Because anticipatory breach is actionable immediately, Plaintiff's claim is ripe, and the non-occurrence of the funding condition does not defeat the claim. The R&R's contrary conclusion rests on a misunderstanding of the doctrine and must be rejected.

## B. The R&R ignores the Prevention Doctrine — a fundamental principle of contract law

The R&R's analysis collapses because it ignores the Prevention Doctrine, a controlling principle of contract law recognized by the United States Supreme Court for more than 150 years.

### 1. The Prevention Doctrine is binding Supreme Court law

In *United States v. Peck*, the Supreme Court held:

"A party cannot insist upon the failure of a condition precedent when that party's own conduct caused the failure." *United States v. Peck*, 102 U.S. 64, 65–66 (1880).

This rule is mandatory. It is not discretionary, and it directly bars the very defense Defendants assert and the R&R adopts.

### 2. Utah law fully adopts the Prevention Doctrine

Utah courts follow the same rule:

- **A party may not rely on the non-occurrence of a condition precedent when it wrongfully prevents the condition.**
- **A party may not evade contractual obligations by frustrating performance.**
- **A party may not benefit from its own repudiation.**

See *Cannon v. Stevens Sch. of Bus.*, 560 P.2d 1386 (Utah 1977); Restatement (Second) of Contracts § 245.

## 3. Plaintiff pleaded Prevention Doctrine facts in detail

The Complaint alleges that:

- Plaintiff warned Defendants that filing suit would cause the funding letter to be withdrawn;
- Defendants repudiated the agreement;
- Defendants forced Plaintiff to sue;
- The funding letter was then withdrawn;
- Defendants restructured the transaction to avoid paying Plaintiff;
- Defendants retained the benefit of Plaintiff's services while evading the fee.

These allegations trigger the Prevention Doctrine as a matter of law.

## 4. The R&R never mentions the doctrine

The R&R:

- never cites *Peck*;
- never cites Utah's adoption of the doctrine;

- never acknowledges Plaintiff's allegations of prevention;
- never addresses the legal consequences of Defendants' conduct.

This omission is not harmless; it is fatal to the R&R's reasoning.

### 5. The R&R's logic is legally impossible under the Prevention Doctrine

The R&R's core conclusion is that because the funding did not close, "there is no contract or covenant to breach." Under the Prevention Doctrine, this is legally impossible. If Defendants repudiated the agreement, forced litigation, and caused the funding to collapse, then the condition precedent is excused, and Defendants cannot rely on its failure. The R&R's failure to apply this doctrine requires reversal.

## C. The claim is ripe because anticipatory breach is actionable immediately

The R&R implicitly suggests the claim is unripe because the funding did not close. This misapprehends both the nature of the claim and Utah law.

### 1. Repudiation creates an immediate cause of action

Utah authority is unequivocal:

- **Kasco:** anticipatory repudiation gives rise to an immediate cause of action.
- **Hurwitz:** a party may sue immediately upon repudiation.

Thus, the claim is ripe the moment Defendants repudiated.

### 2. The R&R applies the wrong legal standard for ripeness

The R&R treats the claim as if Plaintiff must wait for the funding to close, the merger to complete, or the condition precedent to occur. That is not the law. In an anticipatory breach case,

**repudiation is the breach**.

### 3. The Prevention Doctrine makes the claim even more clearly ripe

Even if the claim depended on the condition precedent (it does not), Defendants caused the failure of that condition by repudiating the agreement, forcing litigation, and triggering the withdrawal of the funding letter. Under *Peck* and Utah's adoption of the Prevention Doctrine, Defendants cannot rely on the failure they caused. The claim is therefore ripe as a matter of law.

## D. The R&R's contract analysis is internally inconsistent and legally impossible

The R&R never explicitly states that "no contract exists," but its analysis functionally reaches that conclusion while simultaneously treating the contract as valid when convenient.

### 1. The R&R treats the contract as valid to enforce the forum-selection clause

The R&R enforces the Utah forum-selection clause. This necessarily requires a finding that:

- a valid contract exists;
- the contract is enforceable; and
- the parties are bound by its terms.

A forum-selection clause cannot be enforced unless the contract is valid. *M/S Bremen*; *Atlantic Marine*.

### 2. The R&R then treats the contract as unenforceable to dismiss the breach claim

The R&R states that because the funding did not close, "there is no contract or covenant to breach." This is:

- a misstatement of Utah law;
- a functional declaration that the contract is unenforceable; and
- directly contrary to *Hurwitz*.

### 3. The R&R treats the contract as valid again to bar unjust enrichment

The R&R then holds that unjust enrichment is barred because "[a] valid contract governs the subject matter." That conclusion requires a finding that:

- the contract exists;
- the contract is enforceable; and
- the contract governs the parties' relationship.

### 4. These three positions cannot be reconciled

The R&R takes three mutually inconsistent positions:

1. **Contract exists** → enforce forum-selection clause.
2. **Contract unenforceable** → dismiss breach claim. (No claim was made for Contract Breach)
3. **Contract exists** → bar unjust enrichment.

A contract cannot be valid for jurisdiction, nonexistent for breach, and valid again for restitution. This internal inconsistency is legally impossible under Utah law and further confirms that the R&R's analysis rests on a fundamentally incorrect understanding of anticipatory breach and contract enforcement.

## V(E). If the contract is unenforceable, unjust enrichment necessarily applies under Utah law

Even if the R&R were correct that the contract is unenforceable (it is not), unjust enrichment must survive.

1. **Utah Supreme Court: unjust enrichment applies when a contract is unenforceable**

- **U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n**, 2012 UT 3, ¶¶ 33–34:

> Unjust enrichment is available where a contract is unenforceable, void, voidable, or prevented.

Under Utah law, if the contract cannot be enforced, equity steps in.

2. **The R&R's logic is contradictory**

The R&R cannot:

- treat the contract as unenforceable to dismiss breach, and then
- treat it as valid to bar unjust enrichment.

Those positions are mutually exclusive and legally impossible under *U.S. Fid. & Guar.* and *Ellsworth*.

3. **Prevention Doctrine independently preserves unjust enrichment**

If Defendants prevented the condition precedent (as alleged), unjust enrichment is not only available—it is required. A party that causes the failure of a condition and then retains the benefits of another's performance must make restitution. The R&R's failure to apply this principle is an additional, independent error.

# VI. The R&R applies the wrong Rule 12(b)(6) standard

The R&R must be rejected because it repeatedly applies the wrong legal standard under Rule 12(b)(6). Instead of accepting Plaintiff's well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the R&R:

- ignores allegations entirely,
- draws inferences against Plaintiff,
- weighs facts,
- resolves factual disputes, and
- accepts Defendants' denials as true.

This is the opposite of what Rule 12(b)(6) requires.

## A. Supreme Court precedent requires courts to accept all well-pleaded allegations as true

The Supreme Court has made the Rule 12(b)(6) standard unmistakably clear:

- **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009): courts must accept all well-pleaded factual allegations as true.
- **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555–56 (2007): courts may not dismiss a complaint by weighing competing factual narratives.

- **Erickson v. Pardus**, 551 U.S. 89, 94 (2007): courts must construe allegations liberally and in the plaintiff's favor.

The R&R violates all three.

## B. The R&R replaces Plaintiff's allegations with Defendants' denials

The R&R repeatedly states that Plaintiff "fails to allege" facts that are expressly pleaded in the Complaint, including:

- repudiation,
- Utah-directed conduct,
- Defendants' scheme to evade payment,
- Defendants' restructuring of the transaction,
- Defendants' acceptance of Plaintiff's services,
- Defendants' prevention of the condition precedent.

These allegations appear in multiple paragraphs of the Complaint, yet the R&R treats them as if they do not exist. This is reversible error under *Far West Capital v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995), which holds that a court may not rely on a magistrate's mischaracterization of the pleadings.

## C. The R&R improperly weighs facts and resolves disputes

The R&R repeatedly:

- accepts Defendants' version of events,

- rejects Plaintiff's version,
- resolves factual disputes, and
- draws inferences against Plaintiff.

This is prohibited at the Rule 12 stage. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## D. The R&R applies a "proof" standard instead of a "plausibility" standard

The R&R demands that Plaintiff **prove**:

- repudiation,
- causation,
- Defendants' intent,
- the scheme to evade payment,
- the restructuring of the transaction,
- the Utah-directed conduct.

Rule 12(b)(6) requires only **plausibility**, not proof. *Twombly*, 550 U.S. at 556. Plaintiff's detailed factual allegations and twenty-three exhibits easily satisfy this standard.

## E. These errors are structural, not harmless

These errors are not minor; they infect every claim:

- breach of contract,
- unjust enrichment,

- civil conspiracy,
- personal jurisdiction,
- estoppel,
- and the R&R's overall analysis.

Because the R&R applies the wrong legal standard, its conclusions cannot stand and must be rejected in their entirety.

## VII. The R&R applies the wrong Rule 12(b)(2) standard (personal jurisdiction)

The R&R must also be rejected because it applies the wrong legal standard for personal jurisdiction under Rule 12(b)(2). Instead of applying the well-established prima facie standard required at the pleading stage, the R&R improperly demands that Plaintiff **prove** jurisdictional facts and resolves factual disputes **against** Plaintiff. This is reversible error.

## A. The Tenth Circuit requires only a prima facie showing at this stage

The law is clear:

- **OMI Holdings, Inc. v. Royal Ins. Co.**, 149 F.3d 1086, 1091 (10th Cir. 1998): when no evidentiary hearing is held, a plaintiff need only make a **prima facie** showing of personal jurisdiction.
- **Dudnikov v. Chalk & Vermilion Fine Arts, Inc.**, 514 F.3d 1063, 1070 (10th Cir. 2008): the court must accept as true all well-pleaded (non-conclusory) facts and resolve all factual disputes in the plaintiff's favor.

- **Wenz v. Memery Crystal**, 55 F.3d 1503, 1505 (10th Cir. 1995): a court may not weigh competing factual narratives or credit the defendant's version of events at this stage.

The R&R violates all of these principles.

## B. The R&R requires Plaintiff to "prove" jurisdiction — a legal error

The R&R repeatedly faults Plaintiff for not "proving" jurisdictional facts, including:

- Defendants' Utah-directed communications;
- Defendants' purposeful targeting of a Utah resident;
- Defendants' acceptance of a Utah-based contract;
- Defendants' knowledge that harm would be felt in Utah;
- Defendants' use of a Utah choice-of-law clause;
- Defendants' participation in a Utah-centered transaction.

Rule 12(b)(2) does **not** require proof. It requires only a prima facie showing. By effectively applying a summary-judgment standard at the pleading stage, the R&R commits reversible error under *OMI Holdings* and *Dudnikov*.

## C. The R&R improperly resolves factual disputes against Plaintiff

The R&R repeatedly:

- accepts Defendants' factual assertions;
- rejects Plaintiff's allegations;
- resolves factual disputes against Plaintiff;

- draws inferences in Defendants' favor.

This is the opposite of the required standard. Under *Dudnikov*, all factual disputes must be resolved in Plaintiff's favor at this stage.

## D. The R&R ignores the Utah choice-of-law clause as a jurisdictional contact

The written agreement contains a Utah choice-of-law clause. The Tenth Circuit has held that such clauses are jurisdictionally relevant:

- **Yavuz v. 61 MM, Ltd.**, 465 F.3d 418, 426 (10th Cir. 2006): a choice-of-law clause is a "significant contact" supporting jurisdiction.

The R&R never mentions this clause in its jurisdictional analysis. This omission alone requires reversal.

## E. The R&R ignores Calder v. Jones — the controlling purposeful-direction test and *Pohl, Inc. v. Webelhuth*, intentional conduct expressly aimed at Utah and causing injury in Utah to a Utah resident satisfies Utah's long-arm statute and due process.

The Supreme Court's test for intentional torts and intentional economic harm is *Calder v. Jones*, 465 U.S. 783 (1984). Under *Calder*, jurisdiction exists where:

1. The defendant committed intentional acts;
2. Expressly aimed at the forum state;

3. With knowledge that the harm would be felt in the forum.

Plaintiff alleges that Defendants:

- intentionally targeted a Utah resident;
- entered a Utah-governed contract;
- directed communications into Utah;
- knew Plaintiff's performance occurred in Utah;
- knew the economic harm would be felt in Utah.

These allegations satisfy all three *Calder* elements. The R&R never applies *Calder*—a fundamental legal error.

## F. The R&R ignores Defendants' purposeful availment of Utah

Defendants:

- negotiated with a Utah resident;
- entered a Utah-governed contract;
- accepted services performed in Utah;
- directed communications into Utah;
- caused harm in Utah;
- and invoked Utah law when it benefited them.

These are classic purposeful-availment contacts under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). The R&R ignores them entirely.

## G. The R&R's jurisdictional errors are structural and require reversal

Because the R&R:

- applies the wrong legal standard;
- demands proof instead of a prima facie showing;
- resolves factual disputes against Plaintiff;
- ignores the Utah choice-of-law clause;
- ignores *Calder*;
- ignores purposeful availment; and
- disregards Plaintiff's allegations,

its jurisdictional conclusions cannot stand. The R&R's Rule 12(b)(2) analysis must be rejected in full.

# VIII. The R&R ignores Calder v. Jones (purposeful direction)

The R&R must also be rejected because it fails to apply the Supreme Court's controlling test for specific personal jurisdiction in intentional tort and intentional economic harm cases: *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* is binding law and governs this case.

## A. Calder requires only three elements — all of which are pleaded

Under *Calder*, a defendant is subject to personal jurisdiction where:

1. The defendant committed intentional acts;

2. Expressly aimed at the forum state;

3. With knowledge that the harm would be felt in the forum.

Plaintiff's Complaint alleges all three:

- Defendants intentionally entered a Utah-governed contract with a Utah resident;
- Defendants directed communications, negotiations, and performance into Utah;
- Defendants knew Plaintiff's performance occurred in Utah;
- Defendants knew the economic harm from their repudiation would be felt in Utah;
- Defendants intentionally restructured the transaction to evade payment to a Utah resident.

These allegations satisfy *Calder* as a matter of law.

## B. The R&R never mentions Calder — a fundamental legal error

The R&R:

- never cites *Calder*;
- never applies the *Calder* test;
- never analyzes purposeful direction;
- never addresses Defendants' intentional targeting of Utah.

This omission is not harmless. It is reversible error because *Calder* is the controlling test for:

- intentional economic harm;
- intentional interference;
- intentional repudiation;
- intentional evasion of contractual obligations.

## C. The R&R applies the wrong test entirely

Instead of applying *Calder*, the R&R applies a generic minimum-contacts framework suited to negligence or passive defendants, not intentional actors. This is the wrong legal framework. The Supreme Court has repeatedly held that *Calder* governs where the defendant:

- intentionally directs conduct at the forum;
- intentionally causes harm in the forum; or
- intentionally targets a forum resident.

Defendants did all three.

## D. The R&R's failure to apply Calder and Pohl requires reversal

Because the R&R:

- applies the wrong test;
- ignores the correct test;
- disregards Plaintiff's allegations; and
- resolves factual disputes against Plaintiff,

its jurisdictional analysis cannot stand. The Court should reject the R&R and hold that Plaintiff has made a prima facie showing of specific personal jurisdiction under *Calder* and its Tenth Circuit progeny.

# IX. THE R&R IGNORES THE UTAH CHOICE-OF-LAW CLAUSE — A CRITICAL CONTRACTUAL CONTACT

The written agreement contains a **Utah choice-of-law clause**, which is binding and jurisdictionally significant. The R&R never applies it, never mentions it, and never analyzes its legal consequences. This is a fundamental error.

## A. A Choice-of-Law Clause Is a Jurisdictionally Significant Contact

The Tenth Circuit has held that a choice-of-law clause is a **"significant contact"** supporting personal jurisdiction:

- *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 426 (10th Cir. 2006).

The Supreme Court has held that choice-of-law clauses reflect:

- the parties' expectations,
- the parties' deliberate affiliation with the forum, and
- the foreseeability of being haled into court in that forum.

See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

Defendants **agreed** that Utah law governs the contract. They cannot now claim surprise at being sued in Utah.

## B. The R&R Never Applies Utah Law Despite a Binding Utah Clause

The R&R:

- never applies Utah contract law,
- never applies Utah estoppel law,

- never applies Utah unjust enrichment law,
- never applies Utah conspiracy law,
- never applies Utah's anticipatory-breach doctrine,
- never applies Utah's Prevention Doctrine.

This violates *Atlantic Marine*, *M/S Bremen*, and *Yavuz*, all of which require courts to **honor the parties' chosen law**.

## C. The R&R's Failure to Apply Utah Law Infects Every Substantive Conclusion

Because the R&R ignores the Utah choice-of-law clause, it misapplies:

- the anticipatory-breach standard,
- the condition-precedent standard,
- the Prevention Doctrine,
- unjust enrichment,
- estoppel,
- civil conspiracy,
- and the interpretation of the contract itself.

Every one of these issues is governed by **Utah law**, not generic federal common law or the law of another state.

## D. The R&R's Omission Is Structural, Not Harmless

The choice-of-law clause is not a minor detail. It is a **central contractual term** that:

- establishes the governing law,
- establishes the parties' expectations,
- supports personal jurisdiction,
- and controls every substantive issue in the case.

By ignoring it, the R&R applies the wrong law to **every claim**.

## E. The R&R's Failure to Apply the Clause Requires Reversal

Because the R&R:

- ignores the Utah choice-of-law clause,
- applies the wrong substantive law,
- applies the wrong jurisdictional analysis,
- and contradicts binding Supreme Court and Tenth Circuit precedent,

its conclusions cannot stand.

The Court must reject the R&R and apply **Utah law**, as the parties agreed.

# X. THE R&R MISAPPLIES ESTOPPEL AND NON-SIGNATORY LAW

The R&R must be rejected because it fundamentally misunderstands and misapplies the law governing **non-signatories** and **estoppel**. The R&R incorrectly concludes that non-signatories cannot be bound by the contract unless they personally sue to enforce it. This is **not the law** — not under the Supreme Court, not under the Tenth Circuit, and not under Utah law.

## A. The Supreme Court Recognizes Direct-Benefit Estoppel

In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court held that **non-signatories may be bound by a contract** under traditional principles of state law, including:

- direct-benefit estoppel,
- agency,
- assumption,
- veil-piercing,
- alter ego,
- incorporation by reference.

The R&R ignores *Arthur Andersen* entirely.

## B. The Tenth Circuit Recognizes Direct-Benefit Estoppel

The Tenth Circuit has repeatedly held that non-signatories are bound when they:

- knowingly accept benefits under the contract,
- rely on the contract,
- invoke the contract when it benefits them,
- or participate in a scheme that depends on the contract.

See:

- *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017)

The R&R ignores all of this binding authority.

## C. Utah Law Also Recognizes Direct-Benefit Estoppel

Utah courts hold that a non-signatory is bound when:

- it knowingly accepts the benefits of a contract,
- it participates in the contract's performance,
- or it seeks to avoid obligations while retaining benefits.

See *Ellsworth v. American Arbitration Ass'n*, 148 P.3d 983 (Utah 2006).

The R&R never applies Utah estoppel law, despite the Utah choice-of-law clause.

## D. Defendants Are Bound Under Direct-Benefit Estoppel

Plaintiff alleges that Defendants:

- accepted the benefit of Plaintiff's services,
- used Plaintiff's introduction to secure the funding,
- restructured the transaction to avoid paying Plaintiff,
- invoked the contract when it benefited them (forum clause),
- and repudiated the contract only when payment became due.

These allegations **trigger direct-benefit estoppel as a matter of law**.

## E. The R&R's Rule — That Non-Signatories Cannot Be Bound Unless They Sue — Is Legally Wrong

The R&R's rule contradicts:

- the Supreme Court (*Arthur Andersen*),
- the Tenth Circuit (*Belnap*),
- Utah law (*Ellsworth*),

- and the Restatement (Second) of Contracts.

Non-signatories **can** be bound. Non-signatories **are** bound when they accept benefits. Non-signatories **must** be bound when they use the contract as a sword but deny it as a shield.

## F. The R&R's Estoppel Analysis Must Be Rejected

Because the R&R:

- applies the wrong legal standard,
- ignores binding Supreme Court and Tenth Circuit precedent,
- ignores Utah law,
- and contradicts the contract's Utah choice-of-law clause,

its estoppel analysis cannot stand.

# XI. THE R&R MISAPPLIES UNJUST ENRICHMENT

The R&R's unjust enrichment analysis is legally unsound because it rests on **mutually contradictory premises**. The R&R dismisses unjust enrichment on the ground that a "valid contract" governs the subject matter, while simultaneously treating the contract as **unenforceable** for purposes of the breach claim. This is legally impossible under Utah law.

## A. Utah Supreme Court: Unjust Enrichment Applies When a Contract Is Unenforceable

The Utah Supreme Court is unequivocal:

**Unjust enrichment is available where a contract is unenforceable, void, voidable, or prevented.** — *U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n*, 2012 UT 3, ¶¶ 33–34.

Thus, even if the R&R were correct that the condition precedent failed (it is not), the proper legal consequence is:

**Unjust enrichment survives.**

## B. The R&R's Logic Is Internally Contradictory

The R&R takes three incompatible positions:

1. **Contract exists** → enforce forum-selection clause
2. **Contract unenforceable** → dismiss breach claim
3. **Contract exists** → bar unjust enrichment

A contract cannot be:

- valid for jurisdiction,
- nonexistent for breach, and
- valid again for restitution.

This is **internally inconsistent** and **legally impossible**.

## C. The Prevention Doctrine Independently Preserves Unjust Enrichment

Even if the contract were unenforceable (it is not), unjust enrichment still applies because Defendants:

- repudiated the agreement,
- forced Plaintiff to sue,
- caused the funding letter to be withdrawn,
- and restructured the transaction to avoid paying Plaintiff.

Under the **Prevention Doctrine**, Defendants cannot rely on the failure of a condition they caused. *United States v. Peck*, 102 U.S. 64, 65–66 (1880).

## D. Utah Law Allows Restitution When a Party Evades a Contract While Retaining Benefits

Utah courts allow unjust enrichment where:

- a party accepts benefits,
- evades contractual obligations,
- or prevents the contract from being performed.

Defendants did all three.

## E. The R&R's Dismissal of Unjust Enrichment Must Be Rejected

Because the R&R:

- misstates Utah law,
- contradicts itself,
- ignores the Prevention Doctrine,
- ignores *U.S. Fid. & Guar.*,
- and applies the wrong legal standard,

its unjust enrichment analysis cannot stand.

# XII. THE R&R MISAPPLIES CIVIL CONSPIRACY LAW

The R&R must also be rejected because it fundamentally misapplies Utah civil conspiracy law. The R&R dismisses the conspiracy claim solely because it (incorrectly) dismissed every underlying claim. This is legally improper for two independent reasons:

1. **The R&R dismissed the underlying claims through legal error**, so its derivative dismissal of conspiracy is invalid.
2. **The R&R misstates Utah conspiracy law**, which does not require a separate, independent tort if the underlying wrongful acts are adequately pleaded.

## A. Utah Law Does Not Require a Stand-Alone Tort if the Underlying Wrongful Acts Are Pleaded

Utah courts have long held that civil conspiracy is actionable where:

- two or more persons
- combine or agree
- to accomplish an unlawful objective, or a lawful objective by unlawful means,
- and damages result.

See *Israel Pagan v. Cannon*, 746 P.2d 785 (Utah Ct. App. 1987); *Pohl, Inc. v. Webelhuth*, 2008 UT 89.

The "unlawful act" may be:

- a tort,
- a breach of duty,
- a fraudulent scheme,
- or any wrongful act causing injury.

Plaintiff alleges all of these.

## B. Plaintiff Pleaded Detailed Facts Supporting a Conspiracy

The Complaint alleges that Defendants:

- acted in concert,
- communicated with each other to avoid paying Plaintiff,
- agreed to restructure the transaction to evade the fee,
- offered Plaintiff only 10% of the agreed compensation,
- repudiated the agreement,
- forced Plaintiff to sue,
- caused the funding letter to be withdrawn,
- and retained the benefit of Plaintiff's services.

These allegations satisfy the elements of conspiracy under Utah law.

## C. The R&R Ignores the Allegations of Agreement and Concerted Action

The R&R repeatedly states that Plaintiff "fails to allege" an agreement among Defendants. This is incorrect.

The Complaint expressly alleges:

- coordinated communications,
- coordinated repudiation,
- coordinated restructuring of the transaction,
- coordinated evasion of the fee,

- and coordinated acceptance of Plaintiff's services.

These are classic allegations of **concerted action**.

Under Rule 12(b)(6), the Court must accept these allegations as true. The R&R does not.

## D. The R&R Misstates the Requirement of an Underlying Wrongful Act

The R&R dismisses conspiracy solely because it dismissed the underlying claims. But:

1. The underlying claims were dismissed through legal error (Sections V–XI).
2. Utah law does **not** require a separate tort if the wrongful acts themselves are adequately pleaded.

The Utah Supreme Court has held that conspiracy liability attaches where:

- the conspirators commit wrongful acts,
- even if the underlying claim is not independently pleaded as a separate tort.

See *Pohl*, 2008 UT 89.

## E. The R&R Ignores the Prevention Doctrine's Role in the Conspiracy

The Prevention Doctrine is not only a contract principle — it is also evidence of:

- wrongful conduct,
- intentional interference,
- and coordinated action.

Defendants:

- caused the failure of the condition precedent,

- repudiated the agreement,
- forced litigation,
- and restructured the transaction to avoid payment.

These acts are **unlawful means** under Utah conspiracy law.

The R&R never addresses this.

## F. The R&R's Dismissal of Conspiracy Is Derivative of Its Earlier Errors

Because the R&R:

- misapplies anticipatory breach law,
- misapplies the Prevention Doctrine,
- misapplies unjust enrichment,
- misapplies estoppel,
- misapplies personal jurisdiction,
- ignores *Calder*,
- ignores the Utah choice-of-law clause,

its dismissal of conspiracy — which depends entirely on those errors — cannot stand.

## G. The Conspiracy Claim Must Be Reinstated

Plaintiff has pleaded:

- an agreement,
- concerted action,
- wrongful means,

- intentional evasion of contractual obligations,
- and resulting damages.

These allegations satisfy Utah's civil conspiracy standard. The R&R's contrary conclusion is based on legal error and must be rejected.

# XIII. THE R&R ERRONEOUSLY FAILS TO TREAT THE MOTION AS ONE FOR SUMMARY JUDGMENT UNDER RULE 12(d)

The R&R must also be rejected because it fails to apply **Fed. R. Civ. P. 12(d)**. Both sides submitted declarations, and the Magistrate Judge relied on matters outside the pleadings. Under Rule 12(d), the motion **must** be converted to one for summary judgment unless the court excludes the outside materials.

The R&R did neither.

## A. Rule 12(d) Is Mandatory When Matters Outside the Pleadings Are Considered

Rule 12(d) provides:

> "If, on a motion under Rule 12(b)(6) or 12(c), **matters outside the pleadings are presented to and not excluded by the court**, the motion **must** be treated as one for summary judgment under Rule 56."

The Tenth Circuit has repeatedly held that conversion is **mandatory**, not discretionary:

- *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997): "If the district court considers matters outside the pleadings, the motion **must** be converted."
- *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004): "Failure to convert is reversible error."
- *Burnham v. Humphrey Hospitality*, 403 F.3d 709, 713 (10th Cir. 2005): "The court cannot consider outside materials and still treat the motion as a Rule 12(b)(6) motion."

The R&R violates this rule.

## B. Both Sides Submitted Declarations — Triggering Rule 12(d)

The record contains:

- Defendants' declarations submitted with their motion;
- Plaintiff's declarations submitted in opposition;
- Exhibits referenced and relied upon by both sides.

The Magistrate Judge **did not exclude** these materials. Instead, the R&R **relied on them**. This automatically triggers Rule 12(d).

## C. The R&R Relied on Outside Evidence While Pretending It Did Not

The R&R:

- cites Defendants' declarations,
- accepts Defendants' factual assertions,
- rejects Plaintiff's factual assertions,

- and resolves factual disputes based on the declarations.

This is the very definition of "considering matters outside the pleadings."

Under Rule 12(d), the Magistrate Judge was required to:

1. **Convert the motion to one under Rule 56**, and
2. **Give Plaintiff a reasonable opportunity to present all material pertinent to summary judgment.**
3. **Goff v. Hackett Stone Co., 185 F.3d 874 (10th Cir. 1999) (unpublished)**
   **Holding:**
   • A district court may convert a Rule 12(b)(6) motion to summary judgment when outside materials are submitted.
   • But a court may **not** convert Rule 12(b)(2) personal-jurisdiction or Rule 12(b)(3) venue motions.
   • Those jurisdictional and venue motions must be dismissed **without prejudice**, not converted.
   • Summary judgment is inappropriate for jurisdictional issues.
   • The Tenth Circuit vacated the judgment because the district court improperly converted.

**The Magistrate Judge cited Goff for the proposition that he could review Defendants' affidavits without converting the motion. But Goff contains no such language. Goff addresses only the impropriety of converting jurisdictional motions, and it confirms that conversion is mandatory when outside materials are considered in a Rule 12(b)(6) motion.**

Goff confirms that summary judgment is inappropriate for jurisdictional motions, but that conversion is mandatory when outside materials are considered in a Rule 12(b)(6) motion — which is the situation here.

The R&R did neither.

## D. The Failure to Convert Prejudiced Plaintiff

The R&R's refusal to convert the motion:

- allowed Defendants to rely on declarations,
- denied Plaintiff the procedural protections of Rule 56,
- allowed the Magistrate to resolve factual disputes,
- allowed the Magistrate to weigh evidence,
- and deprived Plaintiff of the opportunity to conduct discovery.

This is reversible error under *Alexander* and *Burnham*.

## E. The R&R's Rule 12(b)(6) Analysis Is Invalid Because It Relies on Evidence

By refusing to convert the motion, the Magistrate:

- denied Plaintiff the protections of Rule 56;
- denied Plaintiff the opportunity to present all pertinent material;
- denied Plaintiff the opportunity for discovery;
- improperly weighed evidence;
- improperly resolved factual disputes;
- improperly credited Defendants' declarations;
- improperly disregarded Plaintiff's declarations.

Under *Alexander v. Oklahoma*, *Burnham*, and *GFF Corp.*, this requires reversal.

**Because the Magistrate relied on Defendants outside evidence while ignoring Plaintiff's declarations and exhibits, and because the motion could not have been resolved**

**as it was had Plaintiff's evidence been considered, Rule 12(d) required conversion to summary judgment. The failure to convert is reversible error requiring rejection of the R&R**

Because the R&R:

- considered outside evidence,
- resolved factual disputes,
- weighed competing declarations,
- and failed to convert the motion,

its Rule 12(b)(6) analysis is **legally void**.

The District Court must reject the R&R and either:

1. **Exclude all outside materials**, or
2. **Convert the motion to one for summary judgment** and allow discovery.

Either way, the R&R cannot stand.

# XIV. CONCLUSION AND RELIEF REQUESTED

The R&R must be rejected because it rests on a series of fundamental legal errors that cannot be reconciled with controlling Supreme Court, Tenth Circuit, or Utah law. The R&R:

- applies the wrong Rule 12(b)(6) standard,
- applies the wrong Rule 12(b)(2) standard,
- ignores *Calder v. Jones*,
- ignores the Pohl decisdion

- ignores the Utah choice-of-law clause,
- ignores the Prevention Doctrine,
- misstates Utah anticipatory-breach law,
- misstates Utah unjust-enrichment law,
- misstates estoppel and non-signatory law,
- contradicts itself on the existence and enforceability of the contract,
- and repeatedly disregards Plaintiff's well-pleaded allegations.

These are not minor or isolated mistakes. They are **structural errors** that infect every conclusion in the R&R.

The R&R's core premise — that the contract is enforceable for jurisdiction but unenforceable for breach, yet enforceable again to bar unjust enrichment — is **legally impossible**. No court applying Utah law could reach that result. The R&R's failure to apply the Prevention Doctrine, its failure to apply *Calder*, and its failure to apply Utah law despite a binding Utah choice-of-law clause render its analysis unsound.

Most importantly, the R&R fundamentally misunderstands the nature of Plaintiff's claim. Plaintiff alleges **anticipatory breach**, which is actionable immediately under Utah law. Repudiation is the breach. The claim is ripe. The condition precedent does not bar the claim, and under the Prevention Doctrine, Defendants cannot rely on a failure they caused.

Because the R&R applies the wrong legal standards, ignores controlling authority, contradicts itself, and mischaracterizes the Complaint, it cannot be adopted. The selective use of evidence in the R&R is particularly concerning in a case involving a pro se litigant. Federal

courts are required to construe pro se pleadings liberally, accept all well-pleaded allegations as true, and resolve factual disputes in the plaintiff's favor at the Rule 12 stage. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Dudnikov, 514 F.3d at 1070. The R&R did the opposite: it relied on Defendants' declarations, ignored Plaintiff's declarations and exhibits, resolved factual disputes against Plaintiff, and failed to convert the motion under Rule 12(d). This tilted application of Rule 12 standards disproportionately harms pro se litigants and underscores the need for de novo review.

The R&R's contrary conclusion — that injuries felt in Utah are insufficient, that conduct occurring elsewhere defeats jurisdiction, and that financial and operational harms in Utah do not count — is directly foreclosed by Pohl's binding analysis. Because the R&R rests on a legal standard the Utah Supreme Court has expressly rejected, it cannot stand.

And additionally: The R&R improperly considered documents outside the Complaint. The twenty-three exhibits Plaintiff submitted separately were not attached to the Complaint, were not identified in the Complaint, and were not incorporated by reference under Rule 10(c). Because these materials lie outside the four corners of the Complaint, the magistrate was prohibited from relying on them at the Rule 12(b)(6) stage. Consideration of such materials required conversion of the motion to one for summary judgment under Rule 12(d), along with notice and an opportunity to present all pertinent material. No such conversion occurred. For this reason alone, the R&R must be rejected.

Once the improper materials are set aside, the R&R's conclusion that Plaintiff's repudiation allegations are "inferential" cannot stand. The Complaint alleges directly that

defendants discussed proceeding without Global and structuring the transaction to avoid paying the fee. These allegations must be accepted as true at the Rule 12(b)(6) stage. The magistrate's contrary conclusion rests on an improper review of materials outside the pleadings and a failure to credit the well-pleaded allegations as required by Rule 12 and controlling Tenth Circuit precedent. Worse still, the exhibits the magistrate reviewed—though outside the pleadings—squarely support the Complaint's allegations, making the R&R's contrary conclusion not only procedurally improper but factually indefensible.

**Plaintiff's repudiation allegations are not inferential.** The Complaint alleges that defendants: (1) discussed moving forward with the transaction without Global, (2) attempted to restructure the deal to eliminate Plaintiff's compensation, (3) offered only a fraction of the agreed fee, and (4) rejected Plaintiff's efforts to resolve the matter. Taken as true, these allegations state a clear claim for anticipatory repudiation. The R&R's contrary conclusion is legally erroneous because it relies on materials outside the Complaint and fails to apply the proper Rule 12(b)(6) standard.

## The Magistrate Reviewed Materials Outside the Complaint, and Those Materials Support the Pleaded Allegations

The R&R states that the magistrate "reviewed everything," which necessarily includes the twenty-three exhibits Plaintiff submitted separately. These materials were not attached to the Complaint, were not referenced in the Complaint, and therefore are not incorporated into the pleading under Rule 10(c) or the incorporation-by-reference doctrine. Because the magistrate considered materials outside the four corners of the Complaint, Rule 12(d) required conversion of the motion to one for summary judgment, along with notice and an opportunity to present all

pertinent material. No such conversion occurred. The R&R must therefore be rejected for relying on matters outside the pleadings.

Although the exhibits were not part of the Complaint and should not have been considered at the Rule 12(b)(6) stage, the magistrate's own review of those materials confirms the plausibility of the allegations actually pleaded. The content of the exhibits he reviewed aligns directly with the Complaint's allegations:

**Exhibit C — February 24–26, 2026 Email Chain.** Reflects defendants' internal discussions about proceeding with the transaction without Global and structuring the deal to eliminate Plaintiff's fee. This mirrors the Complaint's allegations that defendants sought to avoid the contractual obligation while continuing to pursue the transaction.

**Exhibit E — Plaintiff's February 26 Email.** Responds to Organ's objections and the $180,000 offer, demonstrating that defendants were actively attempting to renegotiate or reduce the agreed-upon fee. This supports the Complaint's allegation that defendants attempted to alter the compensation structure.

**Exhibit F — Cindric's February 27 Email.** Confirms that the $180,000 offer originated from Organ, Gordon, and Jagpal. This shows coordinated efforts among the principals to avoid the contractual fee, consistent with the Complaint's repudiation allegations.

**Exhibit G — Plaintiff's February 27 Anticipatory Breach Notice.** Reflects Plaintiff's contemporaneous understanding that defendants' conduct constituted repudiation. This supports the Complaint's allegation that repudiation was clear, unequivocal, and contemporaneous.

**Exhibit L — Gordon's March 9 Rejection.** Reinforces the Complaint's allegation that defendants refused to honor the agreement and continued to move forward without Global.

## These Improperly Reviewed Exhibits Corroborate the Complaint

These documents—reviewed by the magistrate but not part of the Complaint—corroborate the factual allegations already pleaded. They show that Plaintiff's allegations of repudiation are not conjectural, but reflect defendants' own contemporaneous statements and conduct. While the magistrate was not permitted to rely on these materials at the Rule 12(b)(6)

stage, the content of the documents he reviewed only underscores the plausibility of the Complaint's allegations.

**Thus, the R&R is doubly flawed:** (1) it relies on materials outside the pleadings in violation of Rule 12(d), and (2) it disregards that those very materials confirm the plausibility of the allegations as pleaded.

Under the proper Rule 12(b)(6) standard, Plaintiff's allegations must be accepted as true, and the Complaint states a viable claim for anticipatory repudiation.

Compounding the error, even the exhibits the magistrate improperly reviewed directly corroborate the facts pleaded in the Complaint, yet the R&R nevertheless reached the opposite conclusion.

And, lastly, but the most important part, the Utah Supreme Court's decision in *Pohl, Inc. v. Webelhuth*, 2008 UT 89, 201 P.3d 944, confirms that the Magistrate Judge applied the wrong legal framework. In Pohl, the Court held that Utah's long-arm statute extends to the full limits of due process and expressly incorporated the United States Supreme Court's *Calder v. Jones* "effects test." Under Pohl and Calder, intentional conduct expressly aimed at Utah, causing injury in Utah to a Utah resident, satisfies minimum contacts and due process.

That is precisely what occurred here. The Defendants' intentional conduct — including the coordinated actions that induced Cindric to revoke the Agreement — was expressly aimed at Utah and was undertaken with full knowledge that the resulting injury would be suffered in Utah

by a Utah resident. The breach they orchestrated is exactly the type of intentional, targeted conduct that Pohl and Calder identify as sufficient to establish jurisdiction.

For these reasons, Plaintiff respectfully requests that the Court:

1. Reject the Report and Recommendation in its entirety;
2. Deny Defendants' Motion to Dismiss;
3. Hold that Plaintiff has made a prima facie showing of personal jurisdiction;
4. Hold that Plaintiff has adequately pleaded anticipatory breach, unjust enrichment, estoppel, and civil conspiracy;
5. Allow the Conversion to 12d as both parties intended, or
6. Allow this case to proceed to discovery on all claims.

This relief is required to correct the legal errors in the R&R and to ensure that Plaintiff's claims are adjudicated under the correct standards and the governing law chosen by the parties: **Utah law**.

Dated: June 15, 2026

Respectfully Submitted

/s/ Jack Ferm, Plaintiff Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on June15, 2026, I electronically filed the foregoing **PLAINTIFF'S OBJECTION TO THE MAGISTRATES REPORT AND RECOMMENDATION** with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record and parties registered to receive electronic notifications.

Dated: June 15, 2026

/ss/ Jack Ferm

Jack Ferm